**WITHDRAWN**                                     [DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 4, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-16164

_____

D. C. Docket No. 06-60227-CV-JIC

HILDA GRADINGER,

                                                        Plaintiff,

EDWARD B. GRADINGER,
CARYLE R. LEVINE,

                                                        Plaintiffs-Appellants,

versus

WASHINGTON NATIONAL INSURANCE COMPANY,

                                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(October 4, 2007)**

Before ANDERSON and PRYOR, Circuit Judges, and VINING,* District Judge.

_____

*Honorable Robert L. Vining, Jr., United States District Judge for the Northern District of
Georgia, sitting by designation.

PER CURIAM:

Edward B. Gradinger and Caryle R. Levine, as personal representatives of the Estate of Hilda Gradinger, appeal the district court's grant of Washington National Insurance Company's motion for final summary judgment and the denial of Mrs. Gradinger's[1] motion for partial summary judgment. The parties do not dispute the facts or the applicable law in this case. They simply disagree on how the law applies to the facts. Because we find that there is more than one reasonable interpretation of the home health care insurance policy at issue, we must liberally construe it in favor of the insured. Thus, we reverse the district court's order.

## I. BACKGROUND

In November 1990, Mrs. Gradinger applied for home health care insurance with Pioneer Life Insurance Company. Pioneer issued a policy to Mrs. Gradinger, effective December 26, 1990, which included multiple pages: (a) introductory pages; (b) a one-page Certificate Schedule; (c) five printed pages detailing information such as policy definitions, benefits, exclusions, and pre-existing conditions limitations; (d) an endorsement page; (e) amendments to the policy; and (f) a copy of Mrs. Grandinger's application for insurance. The introductory pages

---

[1] Mrs. Gradinger died on July 14, 2006. Her personal representatives filed a motion to substitute, which the district court granted on November 31, 2006. Following the custom of the district court and the parties, we refer to Mrs. Gradinger as the plaintiff in this action for the purposes of this opinion.

and five pages following the Certificate Schedule comprised a pre-printed,

standard certificate of insurance.  The Certificate Schedule, which details the

amounts of coverage, was the only portion of the policy specially prepared for Mrs.

Gradinger.

The schedule appears as follows:

CERTIFICATE SCHEDULE

| | |
|---|---|
| HOME HEALTH CARE BENEFIT | $180/DAY |
| LIFETIME MAXIMUM BENEFIT AMOUNT | $250,000 |
| PER OCCURRENCE MAXIMUM BENEFIT | $150,000/ILLNESS |
| AUTOMATIC BENEFIT INCREASE PERCENTAGE | Benefits increase by 8% each year |

INSURED:  Hilda Gradinger       CERTIFICATE NO:      PL0855783A
                                EFFECTIVE DATE:       12-26-90
                                INITIAL PREMIUM:     $1,108.00

Additionally, the pre-printed pages contain the following relevant

provisions:

HOME HEALTH CARE: We will pay 100% of the usual and
customary charges for Home Health Care expenses if the care was
pre-authorized.  If the care was not pre-authorized we will pay 75% of
the usual and customary charges for Home Health Care expenses

3

incurred, up to 75% of the Daily Benefit Amount shown in the schedule.  These benefits will be paid up to the Home Health Care Daily Benefit shown in the schedule.  All benefits will be limited to the Per Occurrence Maximum Benefit for each injury or sickness and the Lifetime Maximum Benefit Amount for ALL injuries and sicknesses which are shown in the certificate schedule.

. . . .

AUTOMATIC DAILY BENEFIT INCREASE: On each policy anniversary, we will increase the Home Health Care Daily Benefit payable under this policy by the Automatic Benefit Increase Percentage shown on the schedule page.

. . . .

LIFETIME MAXIMUM BENEFIT: This coverage shall terminate and no further benefits will be payable when the total sum of Home Health Care or Adult Day Care benefits paid equals the amount shown in the schedule for the Lifetime Maximum Benefit Amount.  Any premium paid for a period after termination will be refunded.

After the policy was issued, Pioneer merged with Washington National Insurance Company.  As a result of the merger, Washington National assumed all obligations under the policy.

In April 1998, Mrs. Gradinger submitted a claim for benefits under the policy because she was receiving medically necessitated home health care.  The insurer paid home health care benefits on behalf of Mrs. Gradinger for approximately five years.  In April 2003, the insurer ceased paying benefits under the policy and terminated coverage because it claimed that Mrs. Gradinger had

4

reached the Lifetime Maximum Benefit amount of $250,000.[2] Mrs. Gradinger

objected to the termination of her coverage, arguing that the liability limit under

the policy had not been met because the Lifetime Maximum Benefit amount had

increased by 8% each year. Subsequently, Mrs. Gradinger received and paid three

premium bills totaling $2,649.75.

In January 2006, Mrs. Gradinger filed her lawsuit against Washington

National in state court, alleging breach of contract (Count I) and waiver and

estoppel (Count II). Washington National removed the case to federal district

court pursuant to 28 U.S.C. § 1332.

In April 2006, Washington National remitted a check to Mrs. Gradinger for

$669.98. An accompanying letter explained that the check was a refund of

unearned premiums collected plus interest at the rate of 7%, minus an overpayment

of claims in the amount of $1,995.50. Mrs. Gradinger accepted the reimbursement.

In September 2006, Mrs. Gradinger moved for partial summary judgment

only on the liability aspect of the breach of contract claim.[3] Washington National

moved for final summary judgment on both the breach of contract claim and the

---

[2] The Per Ocurrence Maximum Benefit amount is not at issue in this case because it is undisputed that Mrs. Gradinger began suffering from a separate and distinct illness requiring home health care covered by the policy after she submitted her initial claim under the policy.

[3] Mrs. Gradinger did not seek summary judgment as to damages payable if the Court ruled in her favor.

waiver and estoppel claim. The district court entered an order granting final summary judgment to Washington National and denying partial summary judgment to Mrs. Gradinger on October 30, 2006. Mrs. Gradinger appeals the district court's dismissal of her breach of contract claim only. She does not appeal the dismissal of her waiver and estoppel claim.

## II. STANDARD OF REVIEW

We review the grant or denial of summary judgment *de novo*. *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 836 (11th Cir. 2006). "Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Elan Pharm. Research Corp. v. Employers Ins. of Wasau*, 144 F.3d 1372, 1374-75 (11th Cir. 1998) (citing Fed. R. Civ. P. 56(c)).

## III. DISCUSSION

This matter is ripe for summary judgment because it involves a pure question of law. The parties do not dispute the relevant facts. They only dispute the proper interpretation of the Maximum Lifetime Benefit amount payable under the home health care insurance policy. Washington National argues that the policy caps the allowable Lifetime Benefit at $250,000. Mrs. Gradinger, on the other hand, asserts that the Maximum Lifetime Benefit should have increased 8% per

6

year from the original $250,000. The district court held that the policy was unambiguous and the plain meaning supported Washington National's interpretation of the of the policy. We disagree.

In this case, Florida law governs the interpretation of the home health care insurance policy. "Thus, we look at the policy as a whole and give every provision its full meaning and operative effect." *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1186 (11th Cir. 2002) (applying Florida law). As we explained in *Hyman*:

> We start with the plain language of the policy, as bargained for by the parties. If that language is unambiguous, it governs. Under Florida law, however, if the "relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the []other limiting coverage, the insurance policy is considered ambiguous," and must be "interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy."

*Id.* (citations omitted) (alteration in original). Florida law requires that the terms of the policy "be given their everyday meaning" and be viewed "in light of the skill and experience of ordinary people." *Lindheimer v. St. Paul Fire and Marine Ins. Co.*, 643 So. 2d 636, 638 (Fla. Dist. Ct. App. 1994).

The only question before us is whether Mrs. Gradinger's interpretation of the policy is a reasonable one. If a person of ordinary skill and experience reasonably could conclude that the Automatic Benefit Increase applies not only to

7

the daily Home Health Care Benefit but to the Lifetime Maximum Benefit as well, then the policy is ambiguous and we must construe its terms liberally in favor of Mrs. Gradinger and strictly against the insurer.

The Benefits section of the policy expressly states that the insurer "will increase the Home Health Care Daily Benefit payable under this policy by the Automatic Benefit Increase Percentage shown on the schedule page."  While this provision makes it clear that the Automatic Benefit Increase applies to the daily benefit, nowhere in the policy does it state that the Automatic Benefit Increase does *not* apply to either of the maximum benefits.  Instead, each time the policy discusses either maximum benefit, the policy directs the reader to the Certificate Schedule.

Turning to that section of the policy, we see that the Certificate Schedule lists three benefits: the Home Health Care Benefit, the Lifetime Maximum Benefit, and the Per Occurrence Maximum Benefit.  After this grouping of three benefits, the schedule sets out the Automatic Benefit Increase Percentage with some spacing between the three benefits and the percentage.  The schedule states: "Benefits increase by 8% each year."  Considering the grouping of the benefits and the alternate uses of the singular and plural forms of the word benefit, nothing in the schedule indicates that the Automatic Benefit Increase only applies to the first of

8

three benefits listed.

The Automatic Benefit Increase appeals to a prospective insured who seeks protection against the rising costs of health care. Promising that benefits increase by 8% each year is a policy selling point; however, if the daily benefit increases over time, but the Lifetime Maximum Benefit remains fixed at its initial level, the period of protection will shrink. Thus, an insured who survives until she has incurred $250,000 in covered costs, will reach the Per Occurrence and Lifetime Maximum Benefit limits sooner. An ordinary person could reasonably assume that the Automatic Benefit Increase does not function to reduce the duration of coverage. In other words, it would be reasonable for an ordinary person to conclude that all benefits increase by 8% each year.

Washington National asserts that Mrs. Gradinger places too much emphasis on the schedule and unreasonably reads this portion of the policy in isolation. The pre-printed, standardized provisions of the policy, however, repeatedly emphasize the centrality of the schedule to the meaning of the policy. Because the schedule was the only portion of the policy specially prepared for Mrs. Gradinger, it is not unreasonable to focus on it, especially considering that none of the policy's other provisions contradict Mrs. Gradinger's interpretation of the schedule.

Reading the Benefits section in conjunction with the Certificate Schedule,

there is an ambiguity as to whether the Automatic Benefit Increase applies to the

Lifetime Maximum Benefit. While the insurer may have intended that the

Automatic Benefit Increase apply exclusively to the daily Home Health Care

Benefit, it is not plain that the policy should be construed so narrowly. Because the

policy is ambiguous, we resolve the issue in favor of Mrs. Gradinger and against the

insurer, the drafter of policy. *See Hyman*, 304 F.3d at 1186.

## IV. CONCLUSION

Accordingly, we reverse the district court's grant of summary judgment in

favor of Washington National and remand the case with instructions to grant Mrs.

Gradinger's motion for partial summary judgment.

**REVERSED and REMANDED.**