[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-14714

_____

D. C. Docket No. 1:08-cv-23401-JIC

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 17, 2012
JOHN LEY
CLERK

SYDELLE RUDERMAN, by and through her
Attorney-in-fact, Bonnie Schwartz,
SYLVIA POWERS, by and through her Attorney-
in-fact, Les Powers, individually and on behalf of
all others similarly situated, et al.

Plaintiffs-Appellees,

versus

WASHINGTON NATIONAL INSURANCE
CORPORATION, Successor in Interest to Pioneer
Life Insurance Company,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 17, 2012)

Before EDMONDSON, MARTIN and SUHRHEINRICH,[*] Circuit Judges.

PER CURIAM:

This case involves a dispute between Plaintiff-Appellees Sydelle Ruderman, Sylvia Powers, and other class members ("the insureds") and Pioneer Life Insurance Company, which is succeeded in this action by Defendant-Appellant Washington National Insurance Corporation ("Washington National"). The controversy is over the proper interpretation of certain similar insurance contracts under Florida law. Washington National appeals the District Court's grant of summary judgment for the insureds.

The District Court concluded that the policies in question were ambiguous and that, under Florida law, they were then to be construed against Washington National. We agree that the policies are ambiguous, but we conclude that Florida law is unsettled on the proper way to resolve the ambiguity. To establish the proper approach to take under Florida law in interpreting the ambiguity, we need some help; so we certify a question to the Supreme Court of Florida.

_____

[*] Honorable Richard F. Suhrheinrich, United States Circuit Judge for the Sixth Circuit, sitting by designation.

Background

The insureds each purchased a Limited Benefit Home Health Care Coverage Policy ("Policy") from Pioneer Life Insurance Company providing reimbursement for certain Home Health Care expenses.[1] For purposes of this appeal, the body of each Policy contains identical language but attached to each Policy is a Certificate Schedule ("Certificate") that sets forth the exact coverage amounts specific to each of the insureds and provides a level of differentiation between each Policy. The Policy provides for reimbursement through a maximum daily benefit called the "Home Health Care Daily Benefit" ("Daily Benefit"). The provision of the Daily Benefit is limited by a "Per Occurrence Maximum Benefit" ("Per Occurrence Cap") for each illness, and a "Lifetime Maximum Benefit" ("Lifetime Cap") for all injuries and sicknesses over the life of the Policy.

---

[1] Washington National Insurance Corporation is the successor to Pioneer Life Insurance Company for the purposes of this case.

In addition to the Daily Benefit, the Per Occurrence Cap, and the Lifetime Cap, the Policy also provides for an "Automatic Daily Benefit Increase" which is defined this way: "AUTOMATIC DAILY BENEFIT INCREASE: On each policy anniversary, we will increase the Home Health Care Daily Benefit payable under the policy by the Automatic Benefit Increase Percentage shown on the schedule page." On the Certificate, the words "Home Health Care Daily Benefit," "Lifetime Maximum Benefit Amount," and "Per Occurrence Maximum Benefit" are each listed on a separate line -- in chart form -- next to a corresponding monetary value. Directly below these lines is an identically formatted line with the words "Automatic Benefit Increase Percentage" and -- where the other lines have a monetary value -- the words "Benefits increase by 8% each year." [2]

This controversy focuses on the application of the Policy's "Automatic Benefit Increase Percentage" ("Automatic Increase") provision. The language

---

[2]The pertinent portion of the Certificate appears this way (dollar amounts provided are illustrative only):

CERTIFICATE SCHEDULE

| | |
|---|---|
| HOME HEALTH CARE DAILY BENEFIT | $ 180 / Day |
| LIFETIME MAXIMUM BENEFIT AMOUNT | $ 250,000 |
| PER OCCURRENCE MAXIMUM BENEFIT | $ 150,000 / Illness |
| AUTOMATIC BENEFIT INCREASE PERCENTAGE | Benefits increase by 8% each year |

4

from the body of the Policy and the language from the Certificate create a potential ambiguity in the Policy about whether the Automatic Increase applies only to the Daily Benefit or whether it also applies to the Lifetime Cap and Per Occurrence Cap in addition to the Daily Benefit. The Plaintiffs represent a class of insureds who have not yet been denied any coverage, but who are seeking to establish the correct amount of their Lifetime Cap and Per Occurrence Cap under the Policy. The District Court concluded that an ambiguity exists in the Policy and granted Summary Judgment for the insureds based on the court's understanding that policy ambiguities should be construed against Washington National as drafter of the Policy.

## Discussion

Under the Florida law of insurance contracts "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [sic] another limiting coverage, the insurance policy is considered ambiguous." Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29, 34 (Fla. 2000). In searching for meaning in an insurance contract under Florida law

"courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." Id.

We agree with the District Court's conclusion that the Policy is ambiguous about whether the Lifetime Cap and Per Occurrence Cap increase each year or whether only the Daily Benefit increases each year. The way the "Benefits" section of the Policy and the Certificate are drafted, it is reasonable to read the Certificate language "Benefits increase by 8% each year" as applying solely to the Daily Benefit; but it is also reasonable to read the Certificate language to mean that all the amounts listed within the Policy's "Benefits" section -- including the "Per Occurrence Maximum Benefit" and the "Lifetime Maximum Benefit" -- increase annually. Under Florida law, because "the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [sic] another limiting coverage, the insurance policy is considered ambiguous." Id.

For us, the correct approach under Florida law in resolving the ambiguity in the Policy is unclear. The chief case out of the Florida Supreme Court on the interpretation of an ambiguity in insurance contracts seems to be Auto-Owners Ins. Co. v. Anderson, 756 So. 2d 29 (Fla. 2000). Anderson was a response to a question certified from this Court and has been repeatedly cited by state and

6

federal courts for the principle that "[a]mbiguous policy provisions are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy." Id. at 34.

While Anderson seems to support the District Court's entry of Summary Judgment against Washington National, another principle of Florida law supports looking to extrinsic evidence to resolve the ambiguity before construing any remaining ambiguity against the drafter of the policy. In Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So. 2d 938 (Fla. 1979), the Florida Supreme Court -- many years before Anderson -- qualified the longstanding rule of construing an ambiguity against the drafter, stating that "[o]nly when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule apposite." Id. at 942. This position has been the basis for many Florida state trial and appeals courts looking to extrinsic evidence to resolve policy ambiguities. See, e.g., Reinman, Inc. v. Preferred Mut. Ins. Co., 513 So. 2d 788 (Fla. 3rd Dist. Ct. App. 1987).

With the Excelsior line of cases in mind, Washington National offered in District Court extensive extrinsic evidence to explain the marketing of the Policy and to show the understanding of various of the insureds -- both when the Policy was purchased and during the life of the Policy -- about what benefits in the Policy

increased annually. There is at least a colorable position that Washington National's proffered extrinsic evidence would resolve any ambiguity in the Policy about what benefits increase annually and would support Washington National's position that only the Daily Benefit increases annually.

While a line of cases exists in Florida supporting the use of extrinsic evidence -- such as that provided by Washington National -- to attempt to resolve ambiguity in insurance contracts before construing any ambiguity against the drafter, the recent <u>Anderson</u> opinion -- while citing <u>Excelsior</u> -- says nothing about this attempt-to-resolve position in reaching its determination that "[a]mbiguous policy provisions are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy." <u>See Anderson</u>, 756 So. 2d at 34. Given the state precedents, the proper approach to take in resolving an ambiguity in an insurance contract seems to us to be an unsettled question of Florida law.

While certification of questions has immense value, it has been our practice to show restraint in certifying questions to state courts. But for truly debatable questions "a federal court should certify the question to the state supreme court to avoid making unnecessary <u>Erie</u>[3] 'guesses' and to offer the state court the opportunity to interpret or change existing law." <u>Mosher v. Speedstar Div. of</u>

---

[3]<u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).

AMCA Int'l, Inc., 52 F.3d 913, 916-17 (11th Cir. 1995). So, instead of attempting

to Erie "guess" how the Florida Supreme Court would resolve the ambiguity in an

insurance contract like the one in this Policy, we certify the following question to

the Florida Supreme Court, pursuant to Fla. Const. art. V, § 3(b)(6). See

Pendergast v. Sprint Nextel Corp., 592 F.3d 1119, 1143 (11th Cir. 2010).


Question Certified


I.      In this case, does the Policy's "Automatic Benefit Increase Percentage"

apply to the dollar values of the "Lifetime Maximum Benefit Amount" and

the "Per Occurrence Maximum Benefit"?

We understand answering this question might include answering the three

following sub-questions:

A.      Does an ambiguity exist about whether the Policy's "Automatic

Benefit Increase Percentage" applies only to the "Home Health Care

Daily Benefit" or whether it also applies to the "Lifetime Maximum

Benefit Amount" and the "Per Occurrence Maximum Benefit"?


9

B.      If an ambiguity exists in this insurance policy -- as we understand that it does -- should courts first attempt to resolve the ambiguity by examining available extrinsic evidence?

C.      Applying the Florida law principles of policy construction, does the Policy's "Automatic Benefit Increase Percentage" apply to the "Lifetime Maximum Benefit Amount" and to the "Per Occurrence Maximum Benefit" or does it apply only to the "Home Health Care Daily Benefit"?

Our statement of the question is not intended to limit the inquiry of the Florida Supreme Court in addressing the issues as it perceives them in considering the record in this case. See Pendergast, 592 F.3d at 1144. To assist the Florida Supreme Court, we hereby order that the entire record in this case, together with the briefs of the parties, be transmitted to that high court.

QUESTION CERTIFIED.