STEVENSON, J.
 

 This appeal stems from the complaint of appellee, Advantage General Insurance Company, Ltd. (“Advantage”), against appellants, Kiln, PLC. (“Kiln”) and QBE International Insurance, Ltd. (“QBE”), collectively doing business as Lloyd’s of London (“Lloyd’s”), seeking declaratory relief regarding entitlement to insurance coverage and damages for breach of contract for failing to pay amounts owed under the insurance policy. The trial court granted summary judgment in favor of Advantage. Because the trial court should have considered extrinsic evidence in interpreting the policy, we reverse.
 

 The complaint alleged that appellants sold and issued a personal accident reinsurance policy to Advantage. Advantage insured an aircraft owned and operated by Air Sunshine, Inc., and procured the policy to cover any loss it would suffer as a result of providing coverage for the airline. After an aircraft crashed, causing the death of two passengers, Advantage paid $600,000 to the families of the passengers, on behalf of the airline. Advantage then sought reimbursement from appellants, pursuant to the policy. The policy provided coverage for claims paid by Advantage for the death or injury of an airline “passenger” in the amount of “US$300,000 any one person as original not exceeding lOx annual salary” (the “disputed language”). However, appellants refused to reimburse Advantage the $600,000. Advantage sought: (1) declaratory relief that the policy provided coverage for the loss sustained by Advantage and (2) money damages for appellants’ breach of contract. Each party filed a motion for summary judgment.
 

 At the hearing held on the motions, Advantage explained that it was originally formed as an insurance company in order to provide passenger liability insurance for the airline. When Advantage sought to obtain reinsurance, it assigned Frank Anton, its agent, to obtain the policy from the Lloyd’s of London marketplace. Anton travelled to London and contacted a broker, John McKeigue, who obtained the policy from appellants. When appellants refused to reimburse Advantage, they reasoned that the policy covered only employed passengers. Appellants believed that the disputed language excluded unemployed persons from coverage. Advantage argued, however, that this language was ambiguous.
 

 While the parties essentially agreed on the above facts, they disagreed on how the policy was drafted. Advantage argued
 
 *431
 
 that McKeigue did not draft the policy, but simply took his direction from them in typing up the policy. Advantage believed that McKeigue was a Lloyd’s broker and was not directly representing it. In McKeigue’s deposition testimony, he stated that his office physically typed the policy, but the terms were those “mandated by Kiln.” McKeigue also testified that the disputed language was required by the underwriter at Kiln. McKeigue stated that he did not author or personally choose any of the coverage language in the policy. Advantage also offered the deposition testimony of Mark Andrews, head of technical claims at Kiln, who testified that the disputed language was added by a Kiln underwriter. Based on this testimony, Advantage believed that the ambiguous language had to be construed against appellants, as drafter of the policy.
 

 Appellants explained that only certain brokers could enter Lloyd’s of London and procure a policy. The process involved negotiation between underwriters, such as appellants, and a broker, like McKeigue, who represents the insured. Appellants argued that McKeigue was representing Advantage and cited McKeigue’s deposition testimony where he stated his belief that Advantage was his client. McKeigue also explained that he used a “slip” to negotiate the policy for Advantage. McKeigue wrote the notation “NE10XAS” and the explanation “not exceeding lOx annual salary” on the slip so that his office would know to include the disputed language as a sub-limitation. Appellants concluded that, since McKeigue understood that coverage was dependent upon the passenger being employed, that knowledge had to be imputed to Advantage.
 

 The trial court ultimately concluded that the disputed language was ambiguous and construed it against appellants and in favor of providing coverage. A trial court’s conclusion that a contract is ambiguous is reviewed de novo.
 
 See Emerald Pointe Prop. Owners’ Ass’n v. Commercial Constr. Indus., Inc.,
 
 978 So.2d 873, 877 (Fla. 4th DCA 2008). A policy is ambiguous when “ ‘the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage.’ ”
 
 Swire Pac. Holdings, Inc. v. Zurich Ins. Co.,
 
 845 So.2d 161, 165 (Fla.2003) (quoting
 
 Auto-Owners Ins. Co. v. Anderson,
 
 756 So.2d 29, 34 (Fla.2000)).
 

 The trial court correctly concluded that the contract is ambiguous. The policy offers no explanation for the meaning of the disputed language.
 
 See Auto-Owners Ins. Co.,
 
 756 So.2d at 34 (“[I]n construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect.”). The disputed language, “US$300,000 any one person as original not exceeding lOx annual salary,” appears in a chart in the policy entitled “INSURED PERSONS AND BENEFITS COVERED.” According to the chart, “Passengers of aircraft as per attached schedule” are persons covered under the policy. Nowhere in the policy are unemployed passengers expressly excluded from coverage. In fact, the policy does not address how, or if, unemployed passengers are covered. Further, the insertion of the phrase “as original” is cryptic and adds to the confusion rather than shedding light on the overall meaning of the disputed language.
 

 Appellants argue that the policy is not ambiguous and the only reasonable interpretation of the disputed language is that $300,000 is the maximum amount that can be paid out and the language “not exceeding lOx annual salary” is a sub-limitation. Thus, unemployed passengers are naturally excluded. Appellants insist that to interpret the policy language otherwise
 
 *432
 
 would lead to an absurd result since, for example, an employed person earning $5,000 per year would receive $50,000 under the policy and a homemaker might receive up to the policy limits of $300,000. While we recognize this anomaly, it appears equally unreasonable that unemployed persons would be excluded from coverage without the policy expressly saying so. Elsewhere in the policy, under “Exclusions,” the policy provides a list of particular exclusions, including injury from drug/alcohol abuse and injury incurred from the “commission of or the attempted commission of a criminal act,” among other situations and circumstances. In spite of such detailed language as to coverage exclusions, nowhere does the policy mention that unemployed passengers are excluded. The ambiguity here does not lie simply in the disputed language, but in the fact that the policy completely fails to address treatment of unemployed passengers, makes no explicit exclusion of them and, instead, states that “passengers of aircraft” are, in fact, “insured persons.”
 
 See Bell Care Nurses Registry, Inc. v. Cont’l Cas. Co.,
 
 25 So.3d 13, 17 (Fla. 3d DCA 2009) (“An insurer is required to make clear precisely what is excluded from coverage.”),
 
 review denied,
 
 38 So.3d 133 (Fla.2010). We also note that the disputed language applies to the policy’s coverage of both “Death” and “Accidental Total Disability.” The limitation “not exceeding lOx annual salary” might be perfectly clear and reasonable when applicable to a claim for total disability, but it is not so clear and reasonable when considering a death claim.
 

 Appellants also argue that, even if the disputed language is ambiguous, the trial court should have considered extrinsic evidence instead of construing the policy against them, as drafter of the policy. On this point, we agree with appellants. In the case of an ambiguous insurance policy, where extrinsic evidence is available, consideration of that evidence may be appropriate.
 
 See, e.g., Castillo v. State Farm Fla. Ins. Co.,
 
 971 So.2d 820, 823 (Fla. 3d DCA 2007) (permitting use of extrinsic evidence to interpret ambiguous provision in homeowners’ insurance policy);
 
 Williams v. Essex Ins. Co.,
 
 712 So.2d 1232, 1232 (Fla. 1st DCA 1998) (remanding for review of extrinsic evidence regarding whether parties’ intended policy to be “primary” or “excess” where policy was ambiguous on matter). Ambiguous policies are often simply construed against the insurer, as drafter of the insurance contract,
 
 see Nat’l Indem. Co. of S. v. Landscape Mgmt. Co.,
 
 963 So.2d 361, 364 (Fla. 4th DCA 2007), but, here, there is even a factual dispute as to which party chose the language of the policy. In the instant case, considering the unique and highly specialized nature of the insurance provided, we believe this is such a case where extrinsic evidence should be used to help resolve the ambiguity in the policy.
 

 Accordingly, we reverse and remand to allow the parties to submit extrinsic evidence on what, if any, coverage is provided to unemployed passengers. We also note that a factual dispute exists regarding the role of McKeigue, and whether his knowledge and understanding of the policy can be imputed to Advantage as its agent.
 
 See, e.g., Almerico v. RLI Ins. Co.,
 
 716 So.2d 774, 776-77 (Fla.1998) (noting that, generally, an insurance broker is treated as agent of insured; however, a “broker may act in the dual capacity of broker for the insured and agent of the insurer”). On remand, the issue should also be addressed.
 

 Reversed and remanded.
 

 HAZOURI and DAMOORGIAN, JJ„ concur.