LABARGA, J.
This case is before the Court for review of a question of Florida law certified by the United States Court of Appeals for the Eleventh Circuit that is determinative of a cause pending in that court and for which that court has indicated there appears to be no controlling precedent. We have jurisdiction. See art. V, § 3(b)(6), Fla. Const. In Ruderman ex rel. Schwartz v. Washington National Insurance Corp., 671 F.3d 1208 (11th Cir.2012), the Eleventh Circuit certified the following multi-part question:
I. IN THIS CASE, DOES THE POLICY’S “AUTOMATIC BENEFIT INCREASE PERCENTAGE” APPLY TO THE DOLLAR VALUES OF THE “LIFETIME MAXIMUM BENEFIT AMOUNT” AND THE “PER OCCURRENCE MAXIMUM BENEFIT”?
Id. at 1212. The Eleventh Circuit further explained that answering this question might include answering the three following sub-questions:
A.Does an ambiguity exist about whether the Policy’s “Automatic Benefit Increase Percentage” applies only to the “Home Health Care Daily Benefit” or whether it also applies to the “Lifetime Maximum Benefit Amount” and the “Per Occurrence Maximum Benefit”?
B. If an ambiguity exists in this insurance policy — as we understand that it does — should courts first attempt to resolve the ambiguity by examining available extrinsic evidence?
C. Applying the Florida law principles of policy construction, does the Policy’s “Automatic Benefit Increase Percentage” apply to the “Lifetime Maximum Benefit Amount” and to the “Per Occurrence Maximum Benefit” or does it apply only to the “Home Health Care Daily Benefit”?
Id. For the reasons set forth below we answer the main certified question in the affirmative, sub-question A in the affirmative, sub-question B in the negative, and sub-question C in the affirmative. We hold that under Florida law applicable to construction of insurance policies, because the policy is ambiguous it must be construed against the insurer and in favor of coverage without resort to consideration of extrinsic evidence. Thus, when so construed, the policy’s automatic benefit increase applies to the daily benefit, the lifetime maximum benefit, and the per occurrence maximum benefit.[1]
BACKGROUND AND FACTS
This case arose when Sydelle Ruder-man, Sylvia Powers, and other Florida insureds filed a class action in the United States District Court for the Southern District of Florida against Pioneer Life Insurance Company, later succeeded by appellant Washington National Insurance *946 Corporation (“Washington National”), concerning insurance policies that provide for reimbursement of certain home health care expenses.[2] The controversy concerned whether the “Automatic Benefit Increase Percentage” (“automatic increase”) provision contained in the insureds’ limited benefit home health care coverage insurance policies applies only to the daily benefit amount or also applies to the per occurrence maximum benefit amount and the lifetime maximum benefit amount. Each policy contains essentially identical language concerning the automatic increase and each policy includes a “Certificate Schedule” that sets forth the coverage amounts for each of the insureds. The policies provide coverage through a maximum daily benefit, called the “Home Health Care Daily Benefit.” The policy coverage is limited by a “Per Occurrence Maximum Benefit” for each illness and a “Lifetime Maximum Benefit” for all injuries and sicknesses during the life of the Policy. See Ruderman, 671 F.3d at 1210. The policies at issue, under the heading “Benefits,” provide as follows:
A. HOME HEALTH CARE: We will pay 100% of the usual and customary charges for Home Health Care expenses if the care was pre-authorized. If the care was not pre-authorized we will pay 75% of the usual and customary charges for Home Health Care expenses incurred, up to 75% of the Daily Benefit Amount shown in the schedule. These benefits will be paid up to the Home Health Care Daily Benefit shown in the schedule. All benefits will be limited to the Per Occurrence Maximum Benefit for each injury or sickness and the Lifetime Maximum Benefit Amount for ALL injuries and sicknesses which are shown in the certificate schedule.
The policies also provide:
B. AUTOMATIC DAILY BENEFIT INCREASE: On each policy anniversary, we will increase the Home Health Care Daily Benefit payable under this policy by the Automatic Benefit Increase Percentage shown on the schedule page.
E. PER OCCURRENCE MAXIMUM BENEFIT: No further benefits will be payable for a sickness or injury when the total sum of Home Health Care or Adult Day Care benefits paid for that occurrence equals the amount shown in the schedule for the Per Occurrence Maximum Benefit. Successive confinement due to the same or related cause not separated by at least 6 months of normal daily living will be considered as the same occurrence.
F. LIFETIME MAXIMUM BENEFIT: This coverage shall terminate and no further benefits will be payable when the total sum of Home Health Care or Adult Day Care benefits paid equals the amount shown in the schedule for the Lifetime Maximum Benefit Amount. Any premium paid for a period after termination will be refunded.
The certificate schedule which is contained in each policy states the following:
CERTIFICATE SCHEDULE
HOME HEALTH CARE DAILY BENEFIT $180 / Day
LIFETIME MAXIMUM BENEFIT AMOUNT $250,000
PER OCCURRENCE MAXIMUM BENEFIT $150,000 / Illness
AUTOMATIC BENEFIT INCREASE PERCENTAGE Benefits increase by 8% each year
*947 See Ruderman, 671 F.3d at 1210.
The district court concluded that the various provisions in the policy, including the certifícate schedule, demonstrated an ambiguity concerning whether the automatic increase applied only to the daily benefit or also applied to the lifetime maximum benefit amount and the per occurrence maximum benefit amount. The district court granted summary judgment for the insureds based on the court’s understanding that Florida law requires that an ambiguous policy must be construed against the insurer and in favor of coverage. On appeal to the Eleventh Circuit, the appeals court stated:
We agree with the District Court’s conclusion that the Policy is ambiguous about whether the Lifetime Cap and Per Occurrence Cap increase each year or whether only the Daily Benefit increases each year. The way the “Benefits” section of the Policy and the Certificate are drafted, it is reasonable to read the Certificate language “Benefits increase by 8% each year” as applying solely to the Daily Benefit; but it is also reasonable to read the Certificate language to mean that all the amounts listed within the Policy’s “Benefits” section — including the “Per Occurrence Maximum Benefit” and the “Lifetime Maximum Benefit”— increase annually. Under Florida law, because “the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and [] another limiting coverage, the insurance policy is considered ambiguous.”
Ruderman, 671 F.3d at 1211 (quoting Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla.2000)). The Eleventh Circuit recognized that this Court held in Anderson that “[ajmbiguous policy provisions are interpreted liberally in favor of the insured and strictly against the drafter who prepared the policy.” Ruderman, 671 F.3d at 1211 (quoting Anderson, 756 So.2d at 34). However, the Eleventh Circuit concluded that “the correct approach under Florida law in resolving the ambiguity in the Policy is unclear.” Ruderman, 671 F.3d at 1211. The basis for this perceived lack of clarity was said to be the decision in Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938 (Fla.1979), which predated Anderson.
Although the Eleventh Circuit recognized that Anderson held ambiguous insurance policy provisions are to be construed against the insurer, the court expressed concern that Excelsior “qualified the longstanding rule of construing an ambiguity against the drafter, [by] stating that ‘[o]nly when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule apposite.’ ” Ruderman, 671 F.3d at 1211 (quoting Excelsior, 369 So.2d at 942). The Eleventh Circuit was uncertain whether this language would require that the court consider extrinsic evidence concerning the terms of the policy before finally concluding that the policy provisions were ambiguous and subject to being construed in favor of coverage and against the insurer.
Whether Florida law allows resort to extrinsic evidence to clarify an ambiguity in an insurance policy was significant in this case, as the Eleventh Circuit explained:
Washington National offered in the District Court extensive extrinsic evidence to explain the marketing of the Policy and to show the understanding of various of the insureds — both when the Policy was purchased and during the life of the Policy — about what benefits in the Policy increased annually. There is at *948 least a colorable position that Washington National’s proffered extrinsic evidence would resolve any ambiguity in the Policy about what benefits increase annually and would support Washington National’s position that only the Daily Benefit increases annually.
Ruderman, 671 F.3d at 1211-12. The Eleventh Circuit then concluded that the proper approach to take concerning admission of extrinsic evidence and resolution of ambiguity in insurance policies is an “unsettled question of Florida law” and certified the above-stated main question and sub-questions to this Court. Id. at 1212.
ANALYSIS
The issue in this case concerns construction of an insurance policy which is a question of law subject to de novo review. See Fayad, v. Clarendon Nat’l Ins. Co., 899 So.2d 1082, 1085 (Fla.2005). Where the language in an insurance contract is plain and unambiguous, a court must interpret the policy in accordance with the plain meaning so as to give effect to the policy as written. See State Farm Mut. Auto. Ins. Co. v. Menendez, 70 So.3d 566, 569-70 (Fla.2011). In construing insurance contracts, “courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect.” U.S. Fire Ins. Co. v. J.S.U.B., Inc., 979 So.2d 871, 877 (Fla.2007) (quoting Anderson, 756 So.2d at 34); see also Swire Pac. Holdings v. Zurich Ins. Co., 845 So.2d 161, 166 (Fla.2003) (same). Courts should “avoid simply concentrating on certain limited provisions to the exclusion of the totality of others.” Id. at 165. However, “[pjolicy language is considered to be ambiguous ... if the language ‘is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage.’ ” Menendez, 70 So.3d at 570 (quoting Travelers Indem. Co. v. PCR Inc., 889 So.2d 779, 785 (Fla.2004) (quoting Swire, 845 So.2d at 165)).
 We have attempted to read the policy at issue in this case as a whole, and have endeavored to give meaning to every provision. In doing so, however, we are constrained to conclude, as did the federal district court and the Eleventh Circuit, that the policy is ambiguous. The policy states in paragraph B of the “Benefits” section that the daily benefit will increase on each policy anniversary “by the Automatic Benefit Increase Percentage shown on the schedule page.” Other portions of the policy also rely on and incorporate the certificate schedule to define the scope of the coverage. Paragraph E of the “Benefits” section of the policy, titled “Per Occurrence Maximum Benefit,” states that “[n]o further benefits will be payable for a sickness or injury when the total sum of Home Health Care or Adult Day Care benefits paid for that occurrence equals the amount shown in the schedule for the Per Occurrence Maximum Benefit.” Thus, the policy relies on the certificate schedule to set forth the maximum amount of coverage at which no further benefits will be payable for an occurrence.
Similarly, paragraph F of the “Benefits” section of the policy, titled “Lifetime Maximum Benefit,” states that “[t]his coverage shall terminate and no further benefits will be payable when the total sum of Home Health Care or Adult Day Care benefits paid equals the amount shown in the schedule for the Lifetime Maximum Benefit Amount.” Again, the policy leaves it to the certificate schedule to indicate at what amount the policy will be terminated due to reaching a maximum lifetime benefit. The certificate schedule provides that “Benefits increase by 8% each year.” This automatic increase provision in the certificate schedule is not expressly limited to the daily benefit and, further, is immedi *949 ately preceded by reference to the “HOME HEALTH CARE DAILY BENEFIT,” the “LIFETIME MAXIMUM BENEFIT AMOUNT,” and the “PER OCCURRENCE MAXIMUM BENEFIT.” Even though the policy can be reasonably read in a way that limits the automatic increase to the daily benefit, it can also reasonably be read to apply the automatic percentage increase to all the “benefits” listed on the certificate schedule — benefits that include the per occurrence maximum benefit and the lifetime maximum benefit.
For these same reasons, the federal district court found the policy to be ambiguous and, in so doing, relied on the reasoning and conclusions in an earlier decision of the Eleventh Circuit, Gradinger v. Washington National Insurance Co., 250 Fed.Appx. 271 (11th Cir.2007), a decision which was withdrawn due to settlement. In Gradinger, the Eleventh Circuit had concluded that a home health care policy with benefits and automatic increase language identical to that in this case was ambiguous because it was susceptible to more than one reasonable interpretation. In so holding, the Eleventh Circuit noted that the policy did not clearly state that the 8% automatic increase did not apply to the per occurrence maximum benefit and the lifetime maximum benefit. Gradinger, 250 Fed.Appx. at 274. The Gradinger court also characterized the Lifetime Maximum Benefit and the Per Occurrence Maximum Benefit as two of “three benefits” set forth on the certificate. Id. at 274-75. The court noted that “[c]onsider-ing the grouping of the benefits and the alternate uses of the singular and plural forms of the word benefit, nothing in the schedule indicates that the Automatic Benefit Increase only applies to the first of three benefits listed.” Id. at 275. Relying on its understanding of Florida law governing the interpretation of insurance policies, the Gradinger court then determined that the ambiguous policy must be interpreted liberally in favor of the insured and strictly against the drafter of the policy. Id. at 275.
The Eleventh Circuit in the instant case did not rely on its reasoning in the Gra-dinger decision and, further, now expresses doubt that Florida law is settled on whether an ambiguous insurance policy should be strictly construed against the insurer or whether extrinsic evidence must first be allowed in an attempt to clarify any potential ambiguity. As noted earlier, the Eleventh Circuit based its uncertainty on this Court’s statement in Excelsior Insurance Co. v. Pomona Park Bar & Package Store, 369 So.2d 938 (Fla.1979), a decision which substantially predated our decision in Anderson. The statement in Excelsior which caused the Eleventh Circuit’s concern — a statement referring to the rule requiring construction of ambiguous policy language against the drafter of the policy — was as follows: “Only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule apposite.” Excelsior, 369 So.2d at 942. We now make clear that nothing in Excelsior expressly holds that extrinsic evidence must be considered in determining if an ambiguity exists. Further, nothing in Excelsior constitutes an implicit declaration that resort must be made to consideration of extrinsic evidence before an insurance policy is found to be ambiguous and construed against the insurer.
Moreover, since Excelsior, this Court has held many times, including in Anderson and thereafter, that where the provisions of an insurance policy are at issue, any ambiguity which remains after reading each policy as a whole and endeavoring to give every provision its full mean *950 ing and operative effect must be liberally construed in favor of coverage and strictly against the insurer. See, e.g., Menendez, 70 So.3d at 570; J.S.U.B., Inc., 979 So.2d at 877; Garcia v. Fed. Ins. Co., 969 So.2d 288, 291 (Fla.2007); Fayad, 899 So.2d at 1086; Swire Pac. Holdings, 845 So.2d at 165; Anderson, 756 So.2d at 34; State Farm, Fire & Cas. Co. v. CTC Dev. Corp., 720 So.2d 1072, 1076 (Fla.1998); Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So.2d 467, 470 (Fla.1993); Deni Assoc, of Florida, Inc. v. State Farm Fire & Cas. Ins. Co., 711 So.2d 1135, 1138 (Fla.1998); State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So.2d 1245, 1248 (Fla.1986).
 As we stated in Berkshire Life Insurance Co. v. Adelberg, 698 So.2d 828 (Fla.1997), “[i]t has long been a tenet of Florida insurance law that an insurer, as the writer of an insurance policy, is bound by the language of the policy, which is to be construed liberally in favor of the insured and strictly against the insurer.” Id. at 830. Thus where, as here, one reasonable interpretation of the policy provisions would provide coverage, that is the construction which must be adopted. We reiterated this special rule for construction of insurance contracts in Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So.2d 528 (Fla.2005), where we stated:
Under Florida law, insurance contracts are construed according to their plain meaning. Ambiguities are construed against the insurer and in favor of coverage. As we recently said:
[W]e must follow the guiding principle that this Court has consistently applied that insurance contracts must be construed in accordance with the plain language of the policy. Further, we consider that “[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous.” An ambiguous provision is construed in favor of the insured and strictly against the drafter.
Taurus Holdings, 913 So.2d at 532 (quoting Swire, 845 So.2d at 165 (citations omitted) (quoting Anderson, 756 So.2d at 34.)).[3]
In 2008, the Eleventh Circuit recognized this same principle in Penzer v. Transportation Insurance Co., 545 F.3d 1303, 1306 (11th Cir.2008), when it cited our decision in State Farm Fire & Casualty Co. v. CTC Development Corp., 720 So.2d 1072, 1076 (Fla.1998), for the principle that “[a]mbi-guities are construed against the insurer.” As recently as 2011, this Court again voiced the longstanding tenet of Florida law that “[w]here the policy language ‘is *951 susceptible to more than one reasonable interpretation, one providing coverage and ... another limiting coverage, the insurance policy is considered ambiguous’ ” and must be “‘construed against the drafter and in favor of the insured.’ ” Chandler v. Geico Indem. Co., 78 So.3d 1293, 1300 (Fla.2011) (quoting Anderson, 756 So.2d at 34).
The certifícate schedule, as the Eleventh Circuit noted, “sets forth the exact coverage amounts specific to each of the insureds and provides a level of differentiation between each Policy.” Ruderman, 671 F.3d at 1210. For this reason, greater reliance may be placed by the insured on the provisions of the certificate schedule. Thus, the certificate schedule should make perfectly clear to which benefits the automatic percentage increase will apply.[4] This is not a matter which the insured may learn for certain only after years of paying premiums and after utilizing home health care services for which required payment has been incurred.
As we noted in Hartnett v. Southern Insurance Co., 181 So.2d 524, 528 (Fla.1965), where an insurance policy is “drawn in such a manner that it requires the proverbial Philadelphia lawyer to comprehend the terms embodied in it, the courts should and will construe them liberally in favor of the insured and strictly against the insurer to protect the buying public who rely upon the companies and agencies in such transactions.” We recognize that “[u]nless restricted by statute or public policy, insurance companies have the same right as individuals to limit their liability and impose conditions upon their obligations.” Canal Ins. Co. v. Giesenschlag, 454 So.2d 88, 89 (Fla. 2d DCA 1984). However, the insurance company has a duty to do so clearly and unambiguously. Similarly, the insurer has the burden to make clear the circumstances under which the policy coverage will terminate after reaching the máximums set forth in the certificate schedule. The certificate schedule in this case does not do so and, thus, under our long-established rules of construction of insurance contracts, the ambiguous policy must be strictly construed against the insurer.
CONCLUSION
For the reasons set forth above, we find the limited home health care policy at issue is ambiguous, with one reasonable interpretation being that the “Automatic Benefit Increase Percentage” by which “benefits increase by 8% each year” applies to all the benefit categories set forth on the certificate schedule. We further hold, consistent with our precedent, that where a contract of insurance is ambiguous, it is to be liberally construed in favor of coverage and strictly against the insurer. Based on these holdings, we answer the main certified question in the affirmative, sub-question A in the affirmative, *952 sub-question B in the negative, and sub-question C in the affirmative. Under Florida law, because the policy is ambiguous it must be construed against the insurer and in favor of coverage without resort to consideration of extrinsic evidence. Thus, the policy’s automatic benefit increase applies to the daily benefit, the lifetime maximum benefit, and the per occurrence maximum benefit.
We conditionally grant the appellees’ motion for appellate attorneys’ fees under section 627.428, Florida Statutes (2012), for proceedings in this Court in which the appellees prevail, but leave to the Eleventh Circuit Court of Appeals to determine the procedure by which that amount shall be set.[5] Having answered the certified questions, we return this case to the United States Court of Appeals for the Eleventh Circuit.
It is so ordered.
PARIENTE and PERRY, JJ., concur.
LEWIS, J., concurs in result.
POLSTON, C.J., dissents with an opinion, in which QUINCE and CANADY, JJ., concur.

. The “policy" referred to by the Eleventh Circuit and by this Court is a "Limited Benefit Home Health Care Coverage Certificate of Insurance” which was issued to the policyholder as evidence of insurance under a group policy. Within each policy is a "Certificate Schedule” which sets forth the policy's daily benefit amount, the per occurrence maximum benefit amount, and the lifetime maximum benefit amount. The Certificate Schedule also sets forth the automatic benefit increase percentage at issue in this case.

. "Florida Insureds” is defined in the motion for class certification as individuals named as insureds in the insurer’s policy or the attorney-in-fact for such individuals, where the insured individuals currently reside in Florida and whose policies were issued to them in Florida. The class period ran from December 1, 2003, to the date of issuance of the summary judgment on September 8, 2010.

. Because this Court's precedent has long set forth special rules regarding construction of insurance contracts, Florida case law cited by Washington National that allows extrinsic evidence to clarify latent ambiguity in contracts other than contracts of insurance does not govern the resolution of the question now before this Court. Moreover, the ambiguity in this case is patent rather than latent, in that it appears on the face of the contract. We are aware that several district courts of appeal in Florida have allowed extrinsic evidence in cases involving construction of insurance contracts. See, e.g., Kiln PLC v. Advantage Gen. Ins. Co., Ltd., 80 So.3d 429, 432 (Fla. 4th DCA 2012) (allowing consideration of extrinsic evidence in part because there was a factual dispute as to which party chose the language of the policy); Castillo v. State Farm Florida Ins. Co., 971 So.2d 820, 823 (Fla. 3d DCA 2007) (allowing consideration of State Farm's internal operating guidelines to assist in defining terms in insurance contract). However, district court decisions such as these and others that have allowed consideration of extrinsic evidence in an attempt to explain, clarify, or resolve an ambiguity in an insurance contract do not alter this Court’s established precedent that ambiguous contracts of insurance are to be construed against the insurer as drafter of the policy, as was the insurer in this case.

. The Fourth District Court of Appeal held in Rucks v. Old Republic Life Insurance Co., 345 So.2d 795 (Fla. 4th DCA 1977), that under group life insurance policies, ambiguities or conflicts between the certificate of insurance and the master policy must be resolved so as to provide the broadest coverage. The court in Rucks then stated, "Where the representations in an insurance certificate indicate broader coverage than that provided by the master policy, the insurer is bound by the terms of the certificate.” Id. at 797 (quoting Evans v. Holly Corp., 15 Cal.App.3d 1020, 1023, 93 Cal.Rptr. 712 (4th Dist.1971)). While not strictly on point here because the question in this case concerns ambiguity between language in the certificate schedule, which is tailored to the insured's individual coverage, and language in the remainder of the certificate of insurance rather than the group master policy, similar concerns would still militate in favor of the greater coverage suggested in the certificate schedule.

. Section 627.428(1), Florida Statutes (2012), provides that ”[u]pon the rendition of a judgment or decree by any of the courts of the state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court, or in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured’s or beneficiary’s attorney prosecuting the suit in which the recovery is had.”