[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13541
Non-Argument Calendar
_____

D. C. Docket No. 6:11-cv-02001-CEH-DAB

CANAL INDEMNITY COMPANY,

Plaintiff-Appellee,

versus

MARGARETVILLE OF NSB, INC.,
MARGARET JAN WALKER,
Trustee,
MARGARET JAN WALKER
Trust,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 15, 2014)

Before PRYOR, MARTIN and BLACK, Circuit Judges.

PER CURIAM:

Margaretville of NSB, Inc.; Margaret Jan Walker, Trustee; and Margaret Jan Walker Trust (Walker Defendants) appeal the district court's grant of summary judgment and declaratory judgment in favor of Canal Indemnity Company (Canal). The Walker Defendants contend the district court erred in granting summary judgment and declaratory judgment because Canal has a duty to defend Bad Lands Excavating (Bad Lands) in an underlying state court lawsuit. After review,[1] we reverse and remand.

## I.  BACKGROUND

### A.  The Policy

Canal issued a policy of Commercial General Liability Insurance to Bad Lands, with effective dates from August 23, 2006 through August 23, 2007. The policy contains a Special Exclusion Endorsement, which contains the following classification limitation provision:

> This insurance applies to bodily injury, property damage, personal injury, advertising injury or medical expense arising out of only those operations which are classified and shown on the Commercial General Liability Coverage Declarations, its endorsements, and supplements.

(quotations omitted).  The policy's Declarations, in turn, refer to the following operation classification:  "Grading of Land—INCL. Borrowing, Filling or Back

---

[1]  We review the district court's grant of summary judgment *de novo*.  *Myers v. Bowman*, 713 F.3d 1319, 1326 (11th Cir. 2013).

Filling." The policy does not provide a definition or explanation of the terms "grading of land," "borrowing," "filling," or "back filling."

B. *The Project*

Trovillion Construction and Development hired Bad Lands to perform labor at a construction site on the beach in New Smyrna Beach, Florida, where an eight-story condominium called "The Wave" was being developed. Bad Lands' owner, Lloyd Scheffler, testified he was initially directed to clear a four-foot path for a chain link fence and a silt fence. Later, Scheffler did excavation work for the foundation of the building. As the equipment operator, he was "just there to move the dirt from the site to the back of the truck and let the truck go down the road."

While excavating the foundation of the building and filling the trucks with the excavated soil, Scheffler realized his digging was creating a risk of harm to the adjacent Walker property. In September 2006, Scheffler installed sheet piling along the property line between The Wave project and the Walker property to prevent his work from undermining the foundation of the adjacent Walker property. The sheet piles Scheffler placed in the ground along the Walker property line were between 19 and 20 feet in length. Scheffler installed the sheet piling using an excavator with a vibrating pile driver attached. The total length of the barrier wall of sheet piling Scheffler installed was approximately 140 to 150 lineal feet, driven to a depth of approximately 18 to 19 feet. The barrier wall of sheet

3

pilings was installed approximately five to eight feet from the property line separating The Wave construction site from the Walker property.

## C. *The Underlying Case*

The Walker Defendants sued Bad Lands, and others, in Florida state court. Bad Lands was sued in negligence for "installing sheet pilings so as to cause damage to [the Walker Defendants'] property," and more generally for breaching its duty "not to engage in activities which would cause damage to [the Walker Defendants'] property."

## II.  DISCUSSION

Under Florida law, "an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage." *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 443-44 (Fla. 2005).  Thus, the issue presented is whether the allegations against Bad Lands in the underlying case fall within Canal's policy coverage.  The allegations against Bad Lands include damage from the action of "installing sheet pilings" and breaching its duty "not to engage in activities which would cause damage."

The construction of an insurance policy is a question of law.  *Wash. Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 948 (Fla. 2013).  "Policy language is considered to be ambiguous if the language is susceptible to more than one

4

reasonable interpretation, one providing coverage and the other limiting coverage." *Id.* (quotations and alterations omitted). In construing an insurance contract, a court "should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." *Id.* (quotations omitted). "[A]ny ambiguity which remains after reading each policy as a whole and endeavoring to give every provision its full meaning and operative effect must be liberally construed in favor of coverage and strictly against the insurer." *Id.* at 949-50. Where "one reasonable interpretation of the policy provisions would provide coverage, that is the construction which must be adopted." *Id.* at 950. Further, "[i]nsurance contracts are construed according to their plain meaning." *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005).

We conclude the language in the policy is ambiguous as to whether Bad Lands' actions of "installing sheet piling" and "engag[ing] in activities which would cause damage" are covered. The policy states that it applies to injuries or damages "arising out of only those operations which are classified and shown on the Commercial General Liability Coverage Declarations, its endorsements, and supplements," and the Declaration covers "Grading of Land—INCL. Borrowing, Filling or Back Filling." Thus, the plain language of the insurance contract states it covers damages arising out of grading of land, including borrowing, filling, or back filling, but it does not define those terms.

5

The district court began its analysis by noting that courts may consult dictionaries in order to ascertain the plain meaning of words in a contract to determine if an ambiguity exists. *See Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291-92 (Fla. 2007). The court then defined "grade," but failed to define "borrowing," "filling," or "back filling."

The *Dictionary of Architecture and Construction* defines grading as "[t]he action of excavating or filling or a combination thereof." Dictionary of Architecture & Construction 469 (4th ed. 2005). The same dictionary defines "borrow" as "[m]aterial taken from one location for use as fill elsewhere." *Id.* at 127. "Fill" is defined as "[s]oil, crushed stone, or waste materials, used to raise an existing grade or as a man-made deposit," or, alternatively "[t]he depth or the volume of such material so added." *Id.* at 397. "Backfill" is defined as "[s]oil which is replaced in an area that has been excavated previously." *Id.* at 74.

The district court also never defined "sheet piling" in its analysis, but in its summary of the Walker Defendants' claims, quoted their definitions for "pile" and "pile driver." The definitions quoted by the district court suggest Bad Lands was driving long slender columns into the ground to carry a vertical load, but "sheet pile" is defined differently—"one of a number of piles, interlocked or meshed with similar units, to form a barrier to retain soil or to keep water out of a foundation." *Id.* at 880. "Sheet piling" is defined as "[a] barrier or diaphragm formed of sheet

6

piles; used to prevent the movement of soil, to stabilize foundations, to construct cofferdams, to prevent the percolation of water, etc." *Id.*

Construing the policy against the drafter, we disagree with the district court's conclusion that the policy is unambiguous and conclude that it is ambiguous whether sheet piling arises out of the operations of grading, filling, back filling, and borrowing such that sheet piling must be covered. *See Garcia*, 969 So. 2d at 291 (stating when an ambiguity in a policy provision does exist, it is interpreted against the insurance company that prepared the policy and in favor of the policy holder). All of the relevant definitions are related to the movement of soil, which makes it possible that damages from sheet piling, an activity incidental to the movement of soil, are damages arising out of grading. Additionally, the district court focused on its interpretation that grading is a "horizontal" activity, while sheet piling is a "vertical" activity, but the definition of grading includes excavating, which is a vertical activity. Further, the underlying suit's more general allegation that Bad Lands breached its duty "not to engage in activities which would cause damage to Plaintiffs' property," could also arise out of grading, which the policy clearly covers.

Thus, because we conclude the exclusion is ambiguous with one reasonable interpretation being that it covers the damages from the allegations in the underlying case, the policy "must be construed against the insurer and in favor of

7

coverage without resort to consideration of extrinsic evidence." *Ruderman*, 117 So. 3d at 952; *see also U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 884 (Fla. 2007) ("If U.S. Fire intended to preclude coverage based on the cause of action asserted, it was incumbent on U.S. Fire to include clear language to accomplish this result."). We therefore conclude Canal has a duty to defend Bad Lands in the underlying case and reverse the district court's grant of summary judgment and declaratory judgment on this issue. We remand this case to the district court for further proceedings.

**REVERSED AND REMANDED**.