NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


CITIZENS PROPERTY INSURANCE )
CORPORATION, )
)
        Appellant, )
)
v. )        Case No. 2D14-4274
)
ARIETY AMAT and BRICEIDA LEON, )
)
        Appellees. )
_____ )

Opinion filed February 19, 2016.

Appeal from the Circuit Court for
Hillsborough County; James M. Barton, II,
Judge.

Jonathan D. Franklin of Franklin Legal
Group, PA, Miami, for Appellant.

Aaron S. Kling of Smith, Kling & Thompson,
P.A., Tampa, for Appellees.


WALLACE, Judge.

        Citizens Property Insurance Corporation (Citizens) appeals a final

judgment for money damages entered in favor of homeowners Ariety Amat and Briceida

Leon (the Homeowners) following a jury trial. The parties' dispute concerned the

Homeowners' claim under their policy of homeowners insurance with Citizens for

alleged damages to their home caused by a sinkhole. On appeal, Citizens makes multiple arguments. We affirm in part and reverse in part.

## I. THE FACTUAL AND PROCEDURAL BACKGROUND

The Homeowners reported damage to their home resulting from suspected sinkhole activity in June 2011. Citizens hired Madrid Engineering Group, Inc. (MEG), to investigate. In January 2012, based upon MEG's finding that "the conditions and minor cracking" in the home were the result of multiple causes other than sinkhole activity, Citizens denied the claim. The Homeowners sought a second opinion from Florida Testing and Environmental, Inc. (FTE), and based on FTE's conclusion that the damage to the Homeowners' residence was caused by sinkhole activity, the Homeowners filed suit.[1]

The case proceeded to a jury trial. The jury found that Citizens had failed to prove that the damage was caused "solely by excluded perils" and "not in combination with sinkhole activity." Upon reaching this finding, the verdict form asked the jury to determine "the total amount necessary to stabilize the land and building, repair the foundation[,] and repair the above ground damages." In a general verdict, the jury determined the Homeowners' total damages to be $169,665.77. This figure corresponded exactly to the total of the amounts requested by the Homeowners'

---

[1]Although Citizens advised the Homeowners of their right to pursue their claim further through the neutral evaluation process, described in section 627.7074, Florida Statutes (2010), the Homeowners declined to take advantage of this method to resolve their dispute with Citizens.

counsel in his closing argument: (1) $72,952 for grouting, (2) $52,500 for underpinning, and (3) $44,213.77 for "cosmetic" or above ground repairs.[2]

In accordance with the jury's verdict, the trial court entered a final judgment in favor of the Homeowners and against Citizens for money damages of $167,16_7_.77, plus prejudgment interest of $25,416.22. Citizens filed a "Motion to Set Aside the Verdict and Enter Judgment in Accordance with its Motion for Directed Verdict, or Alternatively, Motion for New Trial or Motion for Rehearing of the Final Judgment." Among other things, Citizens requested correction of a two-dollar scrivener's error in the amount of the final judgment and a $2500 credit against the amount of the verdict based on the applicable policy deductible. Subsequently, the trial court entered an amended final judgment in accordance with Citizens' motion for damages of $167,16_5_.77 and prejudgment interest of $25,041.43 for a total of $192,207.20. In all other respects, the trial court denied Citizens' post trial motion. This appeal followed.

## II.  DISCUSSION

### A.  *Citizens' Appellate Arguments*

On appeal, Citizens raises four points. First, Citizens argues that the trial court erred in entering a money judgment requiring it to pay for the cost of the subsurface repairs without requiring the Homeowners to enter into a contract for those repairs. Second, Citizens contends that the trial court erred in awarding prejudgment

---

[2]The amounts necessary to repair subsurface damages are treated differently than amounts required for cosmetic repairs under the provisions of policies such as the one at issue in this case and as authorized under section § 627.707(5), Florida Statutes (2010). Accordingly, the trial court should have required the jury to set forth these amounts separately in its verdict.

interest to the Homeowners.  Third, Citizens claims that the trial court erred by failing to reduce the amount of the judgment by the amount of the policy's sinkhole loss deductible.  Fourth, Citizens asserts that the policy's sinkhole loss endorsement established coverage for a sinkhole loss as a named peril.  Based on this assertion, Citizens argues that the trial court erred in allocating to it the burden to prove that the Homeowners' loss occurred as a result of an excluded peril rather than sinkhole activity.

Citizens' third point is baseless.  The trial court gave Citizens a credit for the $2500 policy deductible in the amended final judgment.  Citizens' fourth point is also without merit.  This court has previously resolved the issue raised on Citizens' fourth point adversely to it.  See Mejia v. Citizens Prop. Ins. Corp., 161 So. 3d 576, 578-79 (Fla. 2d DCA 2014); Citizens Prop. Ins. Corp. v. Munoz, 158 So. 3d 671, 674 (Fla. 2d DCA 2014).  We turn now to a consideration of Citizens' first and second points.

## B.  The Necessity of a Contract for the Subsurface Repairs

The sinkhole endorsement on the policy at issue in this case contains the following loss settlement provisions pertaining to a sinkhole loss:

> **(5)** In event of "sinkhole loss":
>
> (a) We will pay for "Sinkhole loss," subject to (e)(ii) below, up to the applicable Section I - Property Coverage Limit of Liability shown in your Declarations.
>
> (b) We will pay no more than the actual cash value of the damaged property; not including underpinning or grouting or any other repair technique performed below the existing foundation of the building, until you enter into a contract for the performance of building stabilization or foundation repairs.
>
> (c) Once you enter into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and as the expenses are incurred.

- 4 -

(d) We may at our option, and with your written approval and written approval of any lienholder, make payment directly to the persons selected by you to perform the land and building stabilization and foundation repairs.

(e) If repair has begun and the professional engineer selected or approved by us determines that the repairs will exceed the applicable Limit of Insurance, we will at our option; either:

(i) Complete the professional engineer's recommended repairs; or

(ii) Pay the policy limits without a reduction for the repair expenses incurred.

Subparagraph (b) allows for immediate payment for only cosmetic repairs, i.e., repairs for damages occurring above the ground. In contrast, subparagraph (b) provides that payment will not be made for subsurface stabilization and repair, i.e., damages occurring below the ground, until the insureds enter into a contract for the subsurface repairs. In addition, subparagraph (c) provides for progress payments, i.e., "as work is performed and expenses are incurred" for the subsurface repairs. This language is consistent with section 627.707(5)(b), Florida Statutes (2010).

Before trial, Citizens filed a motion requesting that the trial court apply the policy restrictions regarding payment for subsurface repairs in any final judgment. The trial court did not rule on the motion before trial. After trial, the Homeowners filed a response in opposition to Citizens' motion. The trial court agreed with the Homeowners and entered the final judgment and the amended final judgment awarding damages for the cost of the subsurface repairs without regard to the limitations of the sinkhole endorsement to the policy.

The Homeowners argue that because Citizens breached the insurance contract, it waived the right to insist on their compliance with the disputed provisions of the policy, and that this breach "was sufficient to authorize the Homeowners to treat the contract as put to an end." However, the cases upon which the Homeowners rely for their argument do not support this legal conclusion. For example, Mercury Insurance Co. of Florida v. Anatkov, 929 So. 2d 624, 627 (Fla. 3d DCA 2006), held that where the insurer has breached a contract by improperly denying coverage, the insurer "cannot be allowed to rely upon a contractual provision prohibiting the insured from settlement of the claim with a responsible party in order to relieve itself from liability," (quoting Infante v. Preferred Risk Mut. Ins. Co., 364 So. 2d 874, 875 (Fla. 3d DCA 1978)). Stated more generally, the effect of an improper denial of coverage may operate to waive an insurer's right to claim as a complete defense that the insureds failed to comply with certain contractual conditions precedent to recovery. See Wegener v. Int'l Bankers Ins. Co., 494 So. 2d 259, 259-60 (Fla. 3d DCA 1986) (compiling cases). But Citizens does not seek to employ the provisions regarding payment for the cost of repair of subsurface damages resulting from sinkhole activity in an attempt to avoid liability. Citizens seeks only to enforce the provisions of the policy that control *how* and *when* it will make the payments for subsurface stabilization and repair. The other case the Homeowners cite, Muñiz v. Crystal Lake Project, LLC, 947 So. 2d 464 (Fla. 3d DCA 2006), involves an action for specific performance of a real estate sales contract, and is inapposite.

In the alternative, the Homeowners argue that, by virtue of Citizens' breach, the contract of insurance should be considered "put to an end." But relief of this sort is generally available when the defaulting party has committed a total breach of the

contract of the kind more commonly seen in the context of agreements for the sale and purchase of real estate and construction contracts. In this regard, Rector v. Larson's Marine, Inc., 479 So. 2d 783 (Fla. 2d DCA 1985), is instructive. The dispute in Rector involved an action for the alleged breach of a contract to repair a boat. The owner of the marina had refused to complete repairs undertaken on a boat, and the owner of the boat filed an action for damages. Id. at 784. This court described the case as involving "a total breach of contract," and we stated the applicable rule as follows:

> In a case that involves a total breach of contract . . . an injured party . . . may treat the contract as void and seek the damages that will restore him to the position he was in immediately prior to entering the contract. Alternatively, he may elect to affirm the contract, insist upon the benefit of his bargain, and seek the damages that would place him in the position he would have been in had the contract been completely performed.

Id. (citing McCray v. Murray, 423 So. 2d 559 (Fla. 1st DCA 1982)). Unlike Rector, the case before us does not involve nonperformance of an entire contract. This case is just a dispute about coverage. Thus Citizens' determination that the Homeowners' claim for damages was not a covered loss under the policy did not change the scope of coverage that it had contracted to provide any more than it eliminated the policy deductible or the policy limits. See Gordon v. 21st Century Ins. Co., Nos. B160115, B163835 2004 WL 1682130 *7 (Cal. Ct. App. July 28, 2004) ("A claim denial can excuse an insured[']s obligation to perform an act required by the policy, but it does not expand the scope of coverage.") (footnote omitted); see also Six L's Packing Co. v. Fla. Farm Bureau Mut. Ins. Co., 268 So. 2d 560, 563 (Fla. 4th DCA 1972) ("The general rule is well established that the doctrine of waiver and estoppel based upon the conduct or action of the insurer (or his agent) is *not* applicable to matters of *coverage* as distinguished from grounds for

*forfeiture*.").  Moreover, the Homeowners did not seek to rescind the entire contract.  In

their complaint, they alleged, in pertinent part:

> Plaintiffs seek the following damages . . . complete
> guaranteed repair of the property in its entirety, including but
> not limited to, ground stabilization, building stabilization,
> foundation repair, and cosmetic repair, or if the property is
> not repairable the full replacement cost for the property.

Thus, even if this case could be said to involve "a total breach of the contract," the

Homeowners themselves chose to enforce the contract, not to rescind it.  Based on the

jury's finding of coverage, the trial court was obligated to enforce the contract, including

the policy's restrictions on Citizens' obligations to pay for the cost of the repair for

subsurface damages.

This case cannot be distinguished from Tower Hill Select Ins. Co. v.

McKee, 151 So. 3d 2 (Fla. 2d DCA 2014).[3]  As we stated in McKee:

> [W]e agree that it was error for the trial court to order Tower
> Hill to pay for subsurface repairs before McKee entered into
> a contract for those repairs.  Because the insurance policy
> contained a loss settlement provision tracking the language
> of section 627.707(5)(b), Florida Statutes (2010), Tower Hill
> had the authority to withhold payment for subsurface repairs
> until McKee entered into a contract for those repairs.

Id. at 4.  Accordingly, we conclude that the trial court erred in ordering Citizens to pay

for subsurface repairs before the Homeowners enter into a contract for those repairs.

We have considered the remainder of the Homeowners' arguments on this issue.

These arguments are without merit and do not warrant discussion.

---

[3]The Homeowners argue that McKee is distinguishable because "in
McKee, the carrier conceded coverage and did not force the case to a jury trial."  The
Homeowners appear to have misread McKee.  Tower Hill denied coverage, and the
only reason the case did not go to a jury trial is because the case was resolved on
summary judgment.

## C. Prejudgment Interest

"[F]or the purpose of assessing prejudgment interest, a claim becomes liquidated and susceptible of prejudgment interest when a verdict has the effect of fixing damages as of a prior date." Argonaut Ins. Co. v. May Plumbing Co., 474 So. 2d 212, 214 (Fla. 1985) (quoting Bergen Brunswig Corp. v. State, Dep't of Health & Rehab. Servs., 415 So. 2d 765, 767 (Fla. 1st DCA 1982)). Here, the request for prejudgment interest was first raised after the jury returned its verdict, and there was no indication that the jury was determining the amount of the loss for any date other than the date of the verdict. See Citizens Prop. Ins. Corp. v. Alvarez, 40 Fla. L. Weekly D2428, D2429 (Fla. 2d DCA Oct. 30, 2015) (holding that the insureds were not entitled to an award of prejudgment interest where "[t]here was [a] dispute as to the cost of the repair, and the jury resolved that dispute and liquidated the claim as of the date of the verdict"); see also McKee, 151 So. 3d at 4 (holding that the homeowners were not entitled to prejudgment interest on an award for subsurface damages where they had not entered into a contract for subsurface repairs.) Accordingly, the trial court erred in awarding prejudgment interest.

### III. CONCLUSION

For the foregoing reasons, we reverse the amended final judgment to the extent that it awarded money damages payable to the Homeowners without recognizing Citizens' right to withhold payment for the cost of the subsurface repairs until the Homeowners enter into a contract for those repairs. We also reverse the award of prejudgment interest. In all other respects, the final judgment is affirmed. On remand,

the trial court shall enter a second amended final judgment in accordance with this opinion and the provisions of the sinkhole endorsement to the policy.

Affirmed in part, reversed in part, and remanded.

LaROSE and CRENSHAW, JJ., Concur.