NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


CITIZENS PROPERTY INSURANCE )
CORPORATION, )
 )
       Appellant, )
 )
v. ) Case No. 2D14-939
 )
DANIEL BLAHA and CLYNDON )
BLAHA, )
 )
       Appellees. )
_____ )

Opinion filed April 8, 2016.

Appeal from the Circuit Court for Pasco
County; Stanley R. Mills, Judge.

Kara Berard Rockenbach of Methe &
Rockenbach, West Palm Beach, for
Appellant.

George A. Vaka and Nancy A. Lauten of
Vaka Law Group, Tampa; and Kenneth
C. Thomas, Jr., and Barbara M.
Hernando of Marshall Thomas, Tampa,
for Appellees.


WALLACE, Judge.

          Citizens Property Insurance Corporation (Citizens) appeals a final

judgment for money damages entered in favor of Daniel Blaha and Clyndon Blaha (the

Blahas) following a jury trial.  The parties' dispute concerned the Blahas' claim under

their policy of homeowners insurance with Citizens for damages caused by a sinkhole under the Blahas' residence. On appeal, Citizens makes multiple arguments. We affirm in part and reverse in part.

## I. THE FACTUAL AND PROCEDURAL BACKGROUND

The Blahas entered into a contract for homeowners insurance with Citizens for the period of August 25, 2010, to August 25, 2011. The policy provided the Blahas with sinkhole coverage by endorsement. The endorsement provided for the repair of and payment of the cost of repair to the Blahas' home in pertinent part as follows:

**SECTION I – PERILS INSURED AGAINST**

. . . .

**Sinkhole Loss**

**1.** We insure for direct physical loss to property covered under Section I caused by the peril of "sinkhole loss," including the costs incurred to:

    **a.** Stabilize the land and building; and

    **b.** Repair the foundation;

In accordance with the recommendations of the professional engineer who verifies the presence of a "sinkhole loss" in compliance with Florida sinkhole testing standards and in consultation with you.

The professional engineer must be selected or approved by us.

. . . .

**SECTION I – CONDITIONS**

. . . .

**(5)** In event of "sinkhole loss":

. . . .

> **(b)** We will pay no more than the actual cash value of the damaged property; not including underpinning or grouting or any other repair technique performed below the existing foundation of the building, until you enter into a contract for the performance of building stabilization or foundation repairs.

> **(c)** Once you enter into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and as the expenses are incurred.

On March 8, 2011, the Blahas reported to Citizens that there were damages to their home, including cracks in the floors, walls, and ceilings. Citizens hired Andreyev Engineering, Inc. (AEI) to evaluate the damage. On May 2, 2011, AEI issued a report stating that sinkhole activity could not be ruled out as a cause of some of the damage to the Blahas' home. AEI recommended stabilizing the home through compaction grouting at forty-two injection points with an estimated 200 to 300 cubic yards of cement grout and 1890 lineal feet of pipe.[1] However in its report, AEI acknowledged that the grout "estimate is very approximate and may vary considerably depending on the actual subsurface conditions encountered." In addition, Raymond Jones, the engineer who prepared the report for AEI, testified that the estimate of 1890 lineal feet of pipe would vary because the depth to which they would need to fill with grout ranged from thirty to fifty feet. AEI's estimated cost for compaction grouting was $77,880. Citizens' field adjuster prepared an estimate for above-ground or cosmetic

---

[1]The contractor performs compaction grouting by drilling into the ground at different injection points and inserting pipe or steel casing, which is used to transfer grout into the ground underneath the house.

repairs to the Blahas' home in the amount of $23,158.13, and Citizens tendered a check to the Blahas for $20,658.13, the amount of the cosmetic repair estimate less their $2500 sinkhole deductible.

The Blahas decided to obtain a peer review of AEI's report and recommendations from Bay Area Sinkhole & Civil Engineering (B.A.S.I.C.). On October 7, 2011, B.A.S.I.C. issued its report based upon AEI's geotechnical engineering study and field work performed by B.A.S.I.C. In accordance with the testing performed by AEI, B.A.S.I.C. agreed that the Blahas' home was being adversely impacted by sinkhole activity. B.A.S.I.C. also recommended subsurface compaction grouting at forty-two injection points with an estimated 300 to 350 cubic yards of grout and 1260 to 2100 lineal feet of pipe. Similar to AEI, B.A.S.I.C. noted that the recommended quantity of grout was "an estimate and [that] a more accurate quantity may be determined after the completion of grouting 2 or 3 grout points." B.A.S.I.C. further recommended shallow chemical grouting "to densify and stabilize the very loose to medium dense shallow soils, encountered in the SPT test borings by AEI, and to complement the compaction grouting program around the exterior of the home." It recommended the use of approximately fifty pounds of chemical grout at each of sixty-one injection points. It estimated the cost of the compaction and chemical grouting to be from $127,570 to $150,350. The Blahas obtained a cosmetic repair estimate from Triad Consulting Group in the amount of $45,149.91.[2]

---

[2]Dennis James, the owner of Triad, testified at trial and explained the differences between Citizen's cosmetic repair estimate and the one that Triad prepared. Neither estimate included the cost to repair additional damage that was anticipated to result from the subsurface repairs, although Triad included the cost to repair the lanai and driveway where the contractor was expected to drill in accordance with AEI's report.

Thereafter, the Blahas obtained and executed a grout installation proposal prepared by Champion Foundation Repair Systems based upon the report provided by B.A.S.I.C. The Champion proposal only included performance of compaction grouting and not chemical grouting because the Blahas wanted to enter into a contract that was in line with AEI's proposed repair. Champion estimated the cost for compaction grouting at the forty-two injection points located by B.A.S.I.C. with a projected 300 to 350 cubic yards of grout and 1260 to 2100 lineal feet of pipe to be from $79,280 to $103,000. On November 21, 2011, the Blahas presented Citizens with a signed contract from Champion, subject to the insurance carrier's approval, to commence the repair protocols set forth in B.A.S.I.C.'s report. Champion's bid expired after thirty days. The Blahas requested Citizens to execute the contract and to issue payment for the initial draw set forth in Champion's payment schedule. In addition, they requested Citizens to authorize the additional chemical grouting recommended by B.A.S.I.C.

Citizens did not approve the Champion contract or authorize chemical grouting at that time. In fact, Mr. Blaha testified that Citizens simply never responded to their request for approval of the Champion contract. According to the testimony of Citizens' stabilization adjuster at trial, the reason that Citizens did not approve the Champion contract was because the proposed amounts of grout and pipe did not exactly match AEI's recommendations. The adjuster acknowledged that AEI's estimate of 1890 lineal feet of pipe fell within the range of 1260 to 2100 lineal feet of pipe set out in the Champion contract. However, it did not "match the engineer's record." Similarly,

---

In addition, Mr. James identified at trial new damages that had occurred since Triad issued its report in 2011. He estimated the cost to repair the new damage to be from $10,000 to $14,000.

the 300 to 350 cubic yards of grout did "not fall in line with what [AEI] was recommending" even though under AEI's report the "quantities [of grout could] vary, depending on what the ground is going to take." On December 29, 2011, the Blahas filed a complaint for breach of contract against Citizens. The Blahas alleged that Citizens' "refusal to authorize and approve the contract executed by [them] constitute[d] a breach of the policy."

While suit was pending, Citizens invoked the neutral evaluation procedure under section 627.7074, Florida Statutes (2012), and litigation was stayed pending neutral evaluation. On April 30, 2013, the neutral evaluator, Pinnacle Engineering and Consulting, issued its report. Pinnacle agreed that sinkhole conditions may exist under the Blahas' home and may be affecting the residence. It also agreed with the use of compaction grouting at forty-two injection points using an estimated 250 to 300 cubic yards of grout. In addition, Pinnacle found that subsurface testing indicated the presence of loose to very loose shallow soil strength that may have developed as a result of the sinkhole activity and "may contribute to minor settlement-related distress after the completion of the compaction grout injection program." Accordingly, Pinnacle recommended shallow chemical grout injection to redensify the shallow soils. Pinnacle recommended the use of twenty-five pounds of chemical grout at fifty-one injection sites. Pinnacle projected the cost of compaction and chemical grouting would be from $101,000 to $118,000. Pinnacle selected W.A. Neumann Construction LLC to prepare a neutral estimate for the cost of the above-ground repairs, which Neumann Construction projected would be $24,519.34.

On May 13, 2013, Citizens advised the Blahas that it would comply with the recommendations of the neutral evaluator, including paying "to stabilize the land and building and repair the foundation in accordance with the reported recommendations of" AEI and the neutral evaluator at a cost of $101,000 to $118,000. Citizens advised the Blahas that they could "select any licensed contractor to perform the stabilization and repairs" and that Citizens would "make payments in accordance with the policy once [the Blahas] have entered into a contract for the building stabilization and foundation repair in accordance with the recommendations of" AEI and the neutral evaluator. The estimate for cosmetic repairs was still under review. The Blahas did not accept Citizens' offer and asked the trial court to permit them to continue with the litigation.

The trial court held a jury trial between September 23 and 25, 2013. The jury was asked to determine whether "Citizens breached the policy of insurance by failing to authorize and pay for the original contract for building stabilization and foundation repairs submitted by the [Blahas]" (the Champion contract) and whether "Citizens breached the policy of insurance by failing to initially authorize necessary, shallow chemical grouting repairs to the Plaintiff's property."

At the conclusion of the Blahas' case, Citizens moved for a directed verdict, arguing that as a matter of law, the Champion proposal submitted to Citizens by the Blahas was not in accordance with the recommendations of AEI and did not trigger Citizens' obligation to pay for subsurface repairs. The trial court denied the motion, agreeing with the Blahas' argument that they were only required to show substantial compliance with the policy requirement that they enter into a repair contract to trigger

Citizens' duty to pay. It found that a factual issue existed as to whether Champion's proposal substantially complied with AEI's recommendations.

The trial court also found that the Blahas were entitled to seek money damages against Citizens if they established that Citizens had breached the policy. The jury was asked to determine (in the event it found a breach) the total amount of money that would fairly compensate the Blahas for compaction grouting, chemical grouting, and above-ground repairs. The jury returned a verdict finding that Citizens had breached the insurance policy by failing to authorize and pay for the Champion contract but not by failing to initially authorize chemical grouting. The jury found that the Blahas would be fairly compensated for the repairs in the following amounts: $105,000 for compaction grouting; $25,000 for chemical grouting; and $65,000 for cosmetic repairs.

After denying Citizens' renewed motion for directed verdict and motion for new trial, the trial court entered a final judgment in favor of the Blahas for $217,186.79. The award included the total amount of damages reflected by the verdict, $195,000, plus $22,186.79 in prejudgment interest calculated from the date Citizens acknowledged receipt of the Blahas' claim through the date of the jury's verdict. Citizens thereafter initiated the subject appeal.

## II. DISCUSSION

### A. The Motion for Directed Verdict

On appeal, Citizens raises three points. First, Citizens contends that the trial court erred in denying its motion for directed verdict because Citizens fully complied with its policy and the sinkhole statute. We disagree. The record shows that the parties had a bona fide dispute about the method and means necessary to perform the

subsurface repairs. The trial court properly submitted that dispute to the jury for determination. We find no error in the trial court's refusal to grant Citizens' motion for directed verdict. Cf. Sanchez v. Royal Palm Ins. Co., 166 So. 3d 212, 213 (Fla. 2d DCA 2015) (reversing in part a final judgment in favor of the insurer); Roker v. Tower Hill Preferred Ins. Co., 164 So. 3d 690, 694 (Fla. 2d DCA 2015) (same).

### B. The Necessity of a Contract for the Subsurface Repairs

Second, Citizens contends that the trial court erred in entering a money judgment in favor of the Blahas for the full amount of the subsurface repairs without first requiring them to enter into a contract for those repairs. The Blahas respond that "[o]nce Citizens breached the insurance policy, the Blahas' further obligations under the policy were discharged." According to the Blahas, Citizens cannot now rely on the provisions of the insurance contract to withhold payment until the Blahas enter into a contract for the subsurface repairs.

We reject the Blahas' argument on this point. Notwithstanding any breach by Citizens, the provisions regarding withholding payment for the subsurface repairs remained in effect, much the same as the provisions for deductibles and policy limits. Under the provisions of the contract, Citizens is not obligated to pay anything for subsurface repair until the Blahas "enter into a contract for performance of building stabilization or foundation repairs." Once the Blahas enter into such a contract, Citizens' contractual obligation is to "pay the amounts necessary to begin and perform such repairs as the work is performed and as the expenses are incurred." Citizens' earlier refusal to pay did not change the scope of the coverage that it contracted to provide. See Gordon v. 21st Century Ins. Co., Nos. B160115, B163835, 2004 WL

1682130, at *7 (Cal. Ct. App. July 28, 2004) ("A claim denial can excuse an insured[']s obligation to perform an act required by the policy, but it does not expand the scope of coverage." (footnote omitted)); see also Six L's Packing Co. v. Fla. Farm Bureau Mut. Ins. Co., 268 So. 2d 560, 563 (Fla. 4th DCA 1972) ("The general rule is well established that the doctrine of waiver and estoppel based upon the conduct or action of the insurer (or his agent) is *not* applicable to matters of *coverage* as distinguished from grounds for *forfeiture*."). For this reason, the trial court erred in entering a money judgment that did not authorize Citizens to withhold payment for the subsurface repairs until the Blahas enter into a contract for those repairs.[3] See Tower Hill Select Ins. Co. v. McKee, 151 So. 3d 2, 4 (Fla. 2d DCA 2014); State Farm Fla. Ins. Co. v. Phillips, 134 So. 3d 505, 508 (Fla. 5th DCA 2014).

**C. Prejudgment Interest**

Third, Citizens argues in the alternative that the trial court erred in awarding the Blahas prejudgment interest from the date of their claim rather than from the date the proceeds would have been due under the policy. Because no payment is due until the Blahas enter into a contract for the subsurface repair, they were not entitled to an award of prejudgment interest on the amounts that the jury awarded for compaction grouting and for chemical grouting. See McKee, 151 So. 3d at 4; see also Citizens Prop. Ins. Corp. v. Alvarez, 40 Fla. L. Weekly D2428, D2429 (Fla. 2d DCA Oct. 30, 2015) (holding that the insureds were not entitled to an award of prejudgment

---

[3]This court recently reached a similar result in Citizens Prop. Ins. Corp. v. Amat, 41 Fla. L. Weekly D448, D450 (Fla. 2d DCA Feb. 19, 2016).

interest where "[t]here was [a] dispute as to the cost of the repair, and the jury resolved that dispute and liquidated the claim as of the date of the verdict").

We also conclude that the trial court erred in awarding the Blahas prejudgment interest on the cosmetic damage award. The record reflects that when the Blahas filed suit, the only credible estimate that Citizen's had for the cosmetic damage to the Blahas' home was the $23,158.13 estimate prepared by its adjuster, which Citizens tendered to the Blahas on July 28, 2011, less their deductible in the amount of $2500.[4] Moreover, the jury was not asked to determine whether Citizens breached its policy by failing to tender any additional amount for cosmetic damages based upon its receipt of the estimate prepared by Triad or by the neutral evaluator after suit was filed. "Nothing in the record . . . supports a theory that the jury was determining [the] cost [for cosmetic damages] for a date other than the date of the verdict." Alvarez, 40 Fla. L. Weekly at D2429. Accordingly, the Blahas were not entitled to an award of prejudgment interest on the cosmetic damage award.

### III. CONCLUSION

For the foregoing reasons, we reverse the final judgment to the extent that it awarded money damages payable to the Blahas without recognizing Citizens' right to withhold payment for the cost of the subsurface repairs until the Blahas enter into a contract for those repairs. We also reverse the award of prejudgment interest. In all other respects, the final judgment is affirmed. On remand, the trial court shall enter an

---

[4]The final judgment states that the Blahas "have returned the original stale cosmetic check in the amount of $20,658.13 to [Citizens]."

- 11 -

amended final judgment in accordance with this opinion and the provisions of the sinkhole endorsement to the policy.

Affirmed in part, reversed in part, and remanded.


KELLY and SALARIO, JJ., Concur.