IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

JOSEPH RINGELMAN,

      Appellant,

v.                                       Case No.  5D16-260

CITIZENS PROPERTY INSURANCE
CORPORATION,

      Appellee.

_____/

Opinion filed September 1, 2017

Appeal from the Circuit Court
for Hernando County,
Richard Tombrink, Jr., Judge.

George A. Vaka and Nancy A. Lauten,
of Vaka Law Group, P.L., Tampa, for
Appellant.

Jonathan D. Franklin, of Franklin Legal
Group, P.A., Miami, for Appellee.

PER CURIAM.

      Appellant, Joseph Ringelman, appeals a final judgment entered in his favor following his suit for breach of contract against his insurer, Citizens Property Insurance Corporation ("Citizens").  Ringelman argues on appeal that the trial court erred by staying execution of the final judgment until he provides Citizens with a signed contract for

completion of the necessary subsurface repairs to his home, which was damaged by sinkhole activity. Considering Citizens's representations during oral argument, we affirm.

Citizens issued Ringelman a homeowner's insurance policy that provided coverage limits of $225,900. The policy included the following provisions concerning sinkhole damage:

> **SECTION I – PERILS INSURED AGAINST**
>
> The following is added to SECTION I – PERILS INSURED AGAINST:
>
> **Sinkhole Loss.**
>
> **1.** We insure for direct physical loss to property covered under Section I caused by the peril of "sinkhole loss," including the costs incurred to:
>
> > **a.** Stabilize the land and building; and
> >
> > **b.** Repair the foundation;
> >
> > In accordance with the recommendations of the professional engineer who verifies the presence of a "sinkhole loss" in compliance with Florida sinkhole testing standards and in consultation with you.
> >
> > The professional engineer must be selected or approved by us.
>
> **2.** This peril does not increase the limit of liability applying to the covered property.
> . . . .
>
> **SECTION I – CONDITIONS**
>
> Loss Settlement paragraph **3.b.(5)** is added as follows:
>
> **(5)** In the event of a "sinkhole loss":
>
> > **(a)** We will pay for "Sinkhole loss," subject to **(e)(ii)** below, up to the applicable Section I – Property

Coverage Limit of Liability shown in your Declarations.

**(b)** We will pay no more than the actual cash value of the damaged property; not including underpinning or grouting or any other repair technique performed below the existing foundation of the building, until you enter into a contract for the performance of building stabilization or foundation repairs.

**(c)** Once you enter into such contract, we will pay the amounts necessary to begin and perform such repairs as the work is performed and as the expenses are incurred.

**(d)** We may at our option, and with your written approval and written approval of any lienholder, make payment directly to the persons selected by you to perform the land and building stabilization and foundation repairs.

**(e)** If repair has begun and the professional engineer selected or approved by us determines that the repairs will exceed the applicable Limit of Insurance, we will at our option; either:

> **(i)** Complete the professional engineer's recommended repairs; or

> **(ii)** Pay the policy limits without a reduction for the repair expenses incurred.

In June 2011, Ringelman notified Citizens that he discovered damage to the floors and walls of his home purportedly caused by sinkhole activity. At the conclusion of the claims process, Citizens extended coverage for the sinkhole loss, informing Ringelman that it would pay $208,322.36 to stabilize his home after he provided Citizens with a signed contract to complete the subsurface repairs.[1] Ringelman responded by sending

---

[1] In the interim, Citizens provided Ringelman with a check for $12,827.23 to repair the cosmetic damage to the property.

Citizens a "Sinkhole Demand Package," requesting a total of $329,110.56 to effect the stabilization repairs. When negotiations reached an impasse, Ringelman filed suit against Citizens for breach of contract, requesting that the jury determine the amount required to effectuate the repairs. The jury returned a verdict against Citizens, finding that it "breached the policy for below ground damages caused by sinkhole activity." The jury determined that "the total amount of subsurface repair costs" amounted to $445,000.

Post-trial, Citizens moved for remittitur, reasoning that the jury's award "exceed[ed] the available insurance coverage by at least $219,000, which does not include any prior payments for the deductible." Citizens further argued in opposition to Ringelman's motion for entry of final judgment that any duty to pay the claim must be preceded by Ringelman providing it with a signed contract to complete the necessary repairs. Ultimately, the lower court granted Citizens's motion for remittitur, reducing the verdict "to the insurance policy limits ($225,900), minus the deductible and previous payments." Ringelman filed a "qualified acceptance of remittitur," explaining that he "reserv[ed] his right to challenge . . . the portion of the order that requires Mr. Ringelman to enter into a contract to repair the sinkhole-damaged property when the cost of those repairs . . . far exceed the policy limits and the amount of the remitted judgment."

After a hearing at which the parties attempted to agree on the language of the final judgment, Citizens proposed a final judgment that included the following provisions:

> (A) The verdict is remitted to subject insurance policy limits ($225,900.00), minus the deductible and any previous payments, if any.
>
> (B) The Plaintiff must use the net proceeds from the remitted monetary final judgment, after consideration of the reasonable attorney's fees and reasonable litigation costs, to repair the sinkhole-damaged property; unless, Defendant pursuant to

4

the subject policy, chooses to exceed the policy limits in the repair of the property.

(C) Execution of this Final Judgment shall be stayed pending the Plaintiff providing Defendant with signed contracts to complete the stabilization and/or cosmetic repairs at the insured property.

(D) That given the Plaintiff is the prevailing party in this action, he is entitled to an award of his reasonable attorney's fees, costs, and interest in the matter as lawfully appropriate.

(E) The Court retains jurisdiction to determine the amount of attorney's fees, costs, and interest that the Plaintiff may recover from Defendant.

Ringelman maintained his position that, because the trial court remitted the verdict to the policy limit, the proposed final judgment placed him in a precarious position wherein he would have to "enter into a contract to, quote, repair, for a house that can't be repaired for the $225,000." The trial court disagreed, entering a final judgment containing the aforementioned provisions requested by Citizens. Ringelman now challenges the portion of the final judgment staying execution until he provides Citizens with a signed contract to complete the necessary repairs.

"The issue in this case concerns construction of an insurance policy which is a question of law subject to de novo review." Wash. Nat'l Ins. Corp. v. Ruderman, 117 So. 3d 943, 948 (Fla. 2013). Section 627.707, Florida Statutes (2011), sets forth the procedures for resolving sinkhole claims. If the insurer verifies damage caused by sinkhole activity, it must adhere to the following procedures for repairing the damage:

(5) If a sinkhole loss is verified, the insurer shall pay to stabilize the land and building and repair the foundation in accordance with the recommendations of the professional engineer retained pursuant to subsection (2), with notice to the policyholder, subject to the coverage and terms of the policy. The insurer shall pay for other repairs to the structure

5

and contents in accordance with the terms of the policy. . . . However, if the insurer's professional engineer determines that the repair cannot be completed within policy limits, the insurer must pay to complete the repairs recommended by the insurer's professional engineer or tender the policy limits to the policyholder.

(a) The insurer may limit its total claims payment to the actual cash value of the sinkhole loss, which does not include underpinning or grouting or any other repair technique performed below the existing foundation of the building, until the policyholder enters into a contract for the performance of building stabilization or foundation repairs in accordance with the recommendations set forth in the insurer's report issued pursuant to s. 627.7073.

(b) In order to prevent additional damage to the building or structure, the policyholder must enter into a contract for the performance of building stabilization and foundation repairs within 90 days after the insurance company confirms coverage for the sinkhole loss and notifies the policyholder of such confirmation. This time period is tolled if either party invokes the neutral evaluation process, and begins again 10 days after the conclusion of the neutral evaluation process.

(c) After the policyholder enters into the contract for the performance of building stabilization and foundation repairs, the insurer shall pay the amounts necessary to begin and perform such repairs as the work is performed and the expenses are incurred. The insurer may not require the policyholder to advance payment for such repairs. If repair covered by a personal lines residential property insurance policy has begun and the professional engineer selected or approved by the insurer determines that the repair cannot be completed within the policy limits, the insurer must complete the professional engineer's recommended repair or tender the policy limits to the policyholder without a reduction for the repair expenses incurred.

Id. § 627.707(5) (emphasis added).

The Second District Court has issued several opinions resolving the precise issue in this case, all of which addressed the same sinkhole provisions in Ringelman's insurance policy. For example, in Citizens Property Insurance Corp. v. Amat, 198 So. 3d

730, 731 (Fla. 2d DCA 2016), the homeowners reported damage to their home from suspected sinkhole activity. Citizens denied the claim, and the case proceeded to a jury trial. Id. After the jury returned a verdict for the homeowners, the trial court entered final judgment against Citizens for approximately $168,000. Id. On appeal, Citizens argued the trial court erred by "requiring it to pay for the cost of the subsurface repairs without requiring the Homeowners to enter into a contract for those repairs." Id. at 732. The Second District Court agreed:

> Subparagraph (b) allows for immediate payment for only cosmetic repairs, i.e., repairs for damages occurring above the ground. In contrast, subparagraph (b) provides that payment will not be made for subsurface stabilization and repair, i.e., damages occurring below the ground, until the insureds enter into a contract for the subsurface repairs. . . .
>
>     . . . .
>
> Thus, even if this case could be said to involve "a total breach of the contract," the Homeowners themselves chose to enforce the contract, not to rescind it. Based on the jury's finding of coverage, the trial court was obligated to enforce the contract, including the policy's restrictions on Citizens' obligations to pay for the cost of the repair for subsurface damages.

Id. at 733-34. Accordingly, the court reversed the "final judgment to the extent that it awarded money damages payable to the Homeowners without recognizing Citizens's right to withhold payment for the cost of the subsurface repairs until the Homeowners enter into a contract for those repairs." Id. at 735. The Second District Court has reached the same conclusion in several additional cases. See, e.g., Citizens Prop. Ins. Corp. v. Simoneau, 197 So. 3d 70, 71 (Fla. 2d DCA 2016); Citizens Prop. Ins. Corp. v. Blaha, 194 So. 3d 411, 416 (Fla. 2d DCA 2016); Citizens Prop. Ins. Corp. v. Retz, 193 So. 3d 1084, 1084 (Fla. 2d DCA 2016).

7

During oral argument in this case, the parties answered questions from the panel regarding which party bears responsibility for paying the cost to repair the home above the $225,900 policy limit, given that the jury determined that it would cost $445,000 to stabilize Ringelman's home. Counsel for Citizens made the following specific representation:

> We have asked for a repair contract to perform the repairs that the jury found were necessary and we have asked for that contract so that we can pay which means we will exceed our policy limits. That is consistent with the statute. . . . As soon as they bring the contract, the process begins.

In light of counsel's statements, we find that Citizens has waived its option under section 3.b.5(e) of the insurance policy to tender the policy limits in lieu of paying in excess of those limits to complete the repairs.[2] Accordingly, we affirm the final judgment but remand with instructions to enter a corrected order reflecting that, when Ringelman provides Citizens with a signed contract to complete the necessary repairs, Citizens shall pay that amount instead of tendering the policy limits.

AFFIRMED and REMANDED with Instructions.

TORPY, WALLIS and LAMBERT, JJ., concur.

---

[2] Case law supports the proposition that counsel's representations during oral argument are binding. See Freeman v. BellSouth Telecomms., Inc., 954 So. 2d 45, 46 (Fla. 1st DCA 2007) ("At oral argument, BellSouth stipulated that if this court were to reverse on appeal, BellSouth would abide by the original jury verdict and abandon its motion for remittitur."); Sound Builders of St. Petersburg, Inc. v. Hanlon, 439 So. 2d 276, 276 (Fla. 2d DCA 1983) ("At oral argument, counsel for both parties stipulated that one of the final judgments should be stricken."); Renfroe v. Renfroe, 326 So. 2d 211, 211 (Fla. 4th DCA 1976) ("On oral argument before the court, counsel for the respective parties stipulated that such payments were to be made weekly. Accordingly the final judgment is modified to this effect.").