NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

JAMES JAY FORBES and FAY ANNETTE )
FORBES, )
                        )
        Appellants, )
                        )
v. )       Case No. 2D17-353
                        )
                        )
PRIME GENERAL CONTRACTORS, )
INC., a Florida corporation, )
                        )
        Appellee. )
_____)

Opinion filed September 7, 2018.

Appeal from the Circuit Court for Lee
County; Alane C. Laboda, Judge.

P. Brandon Perkins and E. Carson Lange
of Rogers Towers P.A., Fort Lauderdale,
for Appellants.

No appearance for Appellee.

SALARIO, Judge.

        This is an appeal from a final judgment on a claim for breach of contract.

James and Fay Forbes sued Prime General Contractors, Inc. for breach after Prime

walked off a home construction job. The Forbeses sought damages that included

payments they made to Prime under the contract, payments they made for updated

architectural plans, certain other expenses, and a loss of equity in their home. After a bench trial, the trial court found that Prime had materially breached its contract with the Forbeses but declined to award these three items of damage. We reverse the damage award in the final judgment and remand with instructions to award the Forbeses such damages as will restore them to the position they enjoyed right before they inked their contract with Prime. We affirm the judgment in all other respects.

The Forbeses and Prime signed a written contract under which Prime agreed to renovate the Forbeses' home in accord with plans drawn up by an architect. In exchange, the Forbeses agreed to pay Prime a total of $276,000 in five separate draws. Under the draw schedule, the Forbeses were to pay (a) 25% of the contract price upon signing, (b) 25% upon completion of demolition, (c) 25% upon completion of the "dry-in" stage of construction,[1] (d) 15% after roofing and siding installation, and (e) the remaining 10% upon completion of the job. The contract provided that "any alteration or deviation from this agreement must be made in writing and signed by the Parties." Prime began the job as agreed, and the Forbeses paid the first two contract draws—totaling $138,000. They also paid an additional $6000 for updated architectural plans.

Under the contract, the Forbeses should not have had to pay anything more until the dry-in phase of the project was done. Unfortunately, things hit a snag before then. Prime said that the cost of the materials it needed to do the job had gone

---

[1]The contract defines the "dry-in" stage as "demo, framing rough-in electric, plumbing and mechanical, roof sheeting and felt and exterior windows and doors if available."

up.  It told the Forbeses that the work would now cost at least $550,000—almost twice the original contract price—and demanded that the Forbeses immediately pay the third draw plus an additional $31,450 for work Prime had already done and for which the Forbeses had already paid.  Prime presented the Forbeses with a written change order making these adjustments.  The Forbeses refused to sign it and told Prime that they were prepared to move forward at the contract price.  Prime refused and walked off the job, leaving the Forbeses' home unfinished and uninhabitable.

Because they could not live in their home, the Forbeses began renting a house nearby so that they had somewhere to stay.  In the meantime, they looked for another contractor to finish the work on their home—ultimately talking with five potential candidates to perform the service—but none was willing to handle the job.  After five months of living in a rental with no luck getting the work on their house finished, the Forbeses bought a new house and moved into it.  They were unable, however, to pay a mortgage on their new house and another mortgage on the home that Prime left uninhabitable.  So they let the uninhabitable home go into foreclosure.  At the time they contracted with Prime, the Forbeses had about $45,000 in equity in the house.  That equity was lost in the foreclosure.

The Forbeses sued Prime for breach of contract, and the case went to a bench trial at which the evidence was consistent with the facts related above.  The Forbeses argued that Prime materially breached the contract by demanding payments to which it was not entitled under the contract and thereafter walking off the job.  Prime contended, among other things, that the Forbeses also failed to perform under the contract, to which the Forbeses answered that they were entitled to suspend performance due to Prime's material breach.  The Forbeses requested the following

items of damages: $138,000 in payments made pursuant to their contract with Prime, $6000 for updated architectural plans, $45,000 of lost equity in their home, $5600 in rent, and various other expenses incurred in reliance on their contract with Prime. It is clear from the damages the Forbeses requested that they were asking to be put in the position they would have occupied had they not contracted with Prime in the first place. Prime asserted and litigated at trial an affirmative defense that the Forbeses failed to mitigate their damages.

About a month after the bench trial wrapped, the trial court entered a final judgment. It found that Prime had materially breached the contract as the Forbeses argued. However, it awarded the Forbeses as damages only the $5600 in rent they paid while searching for a new contractor. The trial court explained that "[t]he purpose of contract damages is to put the injured party in as good a position as that in which full performance would have put him" and concluded that the Forbeses

> failed to offer persuasive or credible evidence at trial of the
> difference between the market value of the home had it been
> completed, less such part of the contract price that has not
> been paid, and the value of the construction that has been
> furnished by [Prime] thus far.

The court also found, without elaboration, that the Forbeses "made a financial decision not to engage in reasonable mitigation efforts" with respect to their damages.

This is the Forbeses' timely appeal of the final judgment. They argue two points: (1) by looking to place them in the position they would have occupied had Prime fully performed instead of the position they would have occupied had they never contracted with Prime, the trial court used an incorrect method of calculating damages; and (2) the trial court's finding that the Forbeses failed to mitigate their damages is unsupported by the evidence. We review the first point de novo, see Tubby's Customs,

- 4 -

Inc. v. Euler, 225 So. 3d 405, 407 (Fla. 2d DCA 2017), and the second for competent substantial evidence, cf. RNK Family Ltd. P'ship v. Alexander-Mitchell Assocs., 890 So. 2d 297, 299 (Fla. 2d DCA 2004). See also Craigside, LLC v. GDC View, LLC, 74 So. 3d 1087, 1089 (Fla. 1st DCA 2011) ("While the parties are entitled to de novo review of the trial court's rulings with respect to the legal effect of the contract, we are bound by the trial court's findings of fact in a case, like the present one, where competent, substantial evidence supports the findings."). Both points have merit.

**Method of calculating damages.** In calculating damages, the trial court erred by failing to honor the Forbeses' choice to deem the contract totally breached and recover those damages that would restore them to the position they occupied immediately before contracting with Prime. When one party to a contract commits a material breach, the nonbreaching party has the option to treat the breach "as a breach of the entire contract—in other words, an entire or total breach."[2] Hyman v. Cohen, 73 So. 2d 393, 397 (Fla. 1954) (quoting 12 Am. Jur. Contracts § 389); see also 24 Richard A. Lord, Williston on Contracts § 64:27 (4th ed. 2018). From the perspective of the nonbreaching party, there are two main consequences of that decision: (1) the nonbreaching party may suspend his or her own performance of the contract, see Rector v. Larson's Marine, Inc., 479 So. 2d 783, 785 (Fla. 2d DCA 1985), and (2) the nonbreaching party can elect one of two damage remedies in a suit for breach, see City of Miami Beach v. Carner, 579 So. 2d 248, 251 (Fla. 3d DCA 1991).

When a party seeks damages for a total breach, "[h]e may treat the contract as void and seek the damages that will restore him to the position he was in

---

[2]No one in this appeal has challenged the trial court's finding that Prime materially breached its contract with the Forbeses.

immediately prior to entering the contract." Rector, 479 So. 2d at 785; see also McCray v. Murray, 423 So. 2d 559, 561 (Fla. 1st DCA 1982). Or, in the alternative, he may instead "affirm the contract, 'insist upon the benefit of his bargain, and seek the damages that would place him in the position he would have been in had the contract been completely performed.' " Tubby's Customs, 225 So. 3d at 407 (quoting Citizen's Prop. Ins. Corp. v. Amat, 198 So. 3d 730, 734 (Fla. 2d DCA 2016)). In the case of a breached construction contract like Prime's contract with the Forbeses, the benefit-of-the-bargain remedy is "either the reasonable cost of completion, or the difference between the value the construction would have had if completed and the value of the construction that has been thus far performed." Rector, 479 So. 2d at 785 (citing Grossman Holdings Ltd. v. Hourihan, 414 So. 2d 1037 (Fla. 1982) (adopting section 346(1)(a) of the Restatement (First) of Contracts (Am. Law Inst. 1932), to cases involving breach of a construction contract)).

Here, the final judgment on its face shows that the trial court believed that the Forbeses were entitled only to the benefit-of-the-bargain remedy. As reflected in the language from its final judgment quoted above, the trial court concluded that the Forbeses were entitled to be put in the position they would have occupied had Prime fully performed and that they had failed to present evidence to establish the key factors that go into that remedy in a construction contract case.

But the reason the Forbeses did not produce that evidence was because they did not seek benefit-of-the-bargain damages. They sought to be put in the position they would have occupied had they never contracted with Prime. It was clear at trial that the Forbeses regarded the breach as total; indeed, they were explicit that they were entitled to suspend their own performance under the contract. And the damages they

- 6 -

asked the court to award—return of payments made under the contract and the equity in their home at the time of contracting—were of a type that regarded the contract as void and attempted to restore the Forbeses to their precontractual situation. Those damages were inconsistent with an affirmance of the contract and request for damages approximating full performance. Cf. Sec. & Inv. Corp. of the Palm Beaches v. Droege, 529 So. 2d 799, 802 (Fla. 4th DCA 1988) ("If the two remedies are inconsistent or mutually exclusive, . . . then the mere choice of one remedy and . . . pursuit of one remedy to judgment . . . operates as an election."); McCray, 423 So. 2d at 561 (holding that a trial court did not err in failing to instruct a jury on benefit-of-the-bargain damages where the evidence supported damages to restore plaintiff to his original condition). In the final analysis, then, the remedy the Forbeses chose and pursued was not the remedy the trial court either considered or awarded.

**Mitigation of damages.** We agree with the Forbeses that the trial court's finding that they failed to mitigate damages was mistaken. The concept of mitigation is often used, as it appears to have been in this case, to refer to the doctrine of avoidable consequences. In contract cases, there is really no "duty to mitigate" because the claimant "is not compelled to undertake any ameliorative efforts"; rather, he is merely prevented from recovering damages he "could have reasonably avoided." Sys. Components Corp. v. Fla. Dep't of Transp., 14 So. 3d 967, 982 (Fla. 2009) (quoting The Florida Bar, Florida Civil Practice Damages § 2.43, at 2–30 (6th ed. 2005)); see also Penton Bus. Media Holdings, LLC v. Orange County, 236 So. 3d 495, 496 (Fla. 5th DCA 2018). The word "reasonably" is important. See Fla. Std. Jury Instr. (Contract & Bus.) 504.9 (requiring a jury to consider which damages could have been avoided through the plaintiff's reasonable efforts). The doctrine of avoidable consequences

does not allow a trial court to reduce damages "based on what 'could have been avoided' through Herculean efforts." Sys. Components, 14 So. 3d at 982. It applies only where a claimant fails to undertake measures to avoid damages that are available to him without undue effort or expense. Id.

Here, there is no competent substantial evidence that the Forbeses could have taken any measure without undue effort or expense to avoid the damages they sought. When Prime walked off the job, the Forbeses were left with an uninhabitable home that no other contractor would finish. At that point, the money they paid for Prime's work and updated plans was sunk; to avoid that loss they would have had to have been able to finish the home, and there was no evidence that they could have done that with another contractor at the price at which Prime was contractually required to do it.

With respect to the lost equity, the Forbeses spent five months living in a rental property as they searched for someone to finish the renovations. After that proved futile, they used their remaining resources to buy a new home rather than continue to make rent payments indefinitely. On the evidence here, had the Forbeses not bought the new house and instead continued paying rent without end, they still would have found themselves unable to continue paying the mortgage on the home that Prime left uninhabitable. This record establishes no course of action available to the Forbeses without undue effort or expense to avoid their damages. Thus, there was no competent substantial evidence to support a damage reduction based on the doctrine of avoidable consequences here. See, e.g., Graybar Elec. Co. v. Stratton of Fla., Inc., 509 So. 2d 1133, 1134 (Fla. 2d DCA 1987) (reversing a final judgment in which the trial

court erroneously applied the doctrine of avoidable consequences despite "insufficient evidence to support the application of that doctrine").

In sum, the trial court's use of the wrong method for calculating damages together with its erroneous application of the doctrine of avoidable consequences denied the Forbeses the full amount of damages to which they were entitled. We reverse the damages award and remand this case to the trial court for entry of an amended final judgment awarding those damages it finds, after hearing any arguments the parties decide to make, are necessary to place the Forbeses in the position they occupied immediately before they contracted with Prime. In all other respects, the final judgment is affirmed.

Affirmed in part; reversed in part; remanded with instructions.

NORTHCUTT and ROTHSTEIN-YOUAKIM, JJ., Concur.