[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 18-11601
Non-Argument Calendar

————————————————

D.C. Docket No. 1:17-cv-22535-FAM; 14-bkc-36362-AJC

VIKTORIA BENKOVITCH,

Plaintiff-Appellant,

versus

VILLAGE OF KEY BISCAYNE, FLORIDA,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————————

(June 20, 2019)

Before BRANCH, GRANT, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Chapter 7 debtor Viktoria Benkovitch appeals *pro se* from the district court's affirmance of two bankruptcy court orders entered in favor of a creditor, the Village of Key Biscayne.  The first order denied Benkovitch's motion to dismiss for insufficient service of process and granted the Village an extension of time to complete service.  The second order overruled her objection to the Village's proof of claim, denied her motion to dismiss for failure to state a claim, and granted the Village's motion for summary judgment.  Finding no error, we affirm.

## I.

Benkovitch and her husband owned a waterfront property at 610 South Mashta Drive, Key Biscayne, Florida ("the Mashta property"), which they let fall into disrepair.  For years, the Village of Key Biscayne implored them to drain a stagnant pool, remove garbage and debris, and correct various other "life-safety issues" on the property.  The Village eventually obtained three magistrate "Order[s] Imposing Civil Penalties" of $4,500 per day for the ongoing violations ("the Magistrate Orders").  Benkovitch and her husband never made the necessary repairs, so the fines continued to accrue.  By the time she filed for Chapter 11 bankruptcy in December 2014, Benkovitch and her husband owed the Village over $5 million in civil penalties.

Concerned that its interests were not adequately represented in Benkovitch's Chapter 11 Plan of Reorganization, the Village filed an objection to confirmation.

2

In the shadow of that objection, Benkovitch and the Village entered into a Stipulation of Settlement ("the Stipulation").  Under the Stipulation, Benkovitch and her family promised to correct "any and all remaining Life-Safety Issues" within ten days, and to pay the Village $89,000 in three installments.  In return, the Village agreed to "terminate any continuing accrual of the Penalties and vacate the Penalty Amount" so that Benkovitch and her husband were "no longer liable whatsoever" for the $5 million in fines.  The Village withdrew its objection, and the bankruptcy court issued an order acknowledging the Stipulation and confirming the Chapter 11 Plan of Reorganization.

Soon after, Benkovitch defaulted on her obligations to another creditor, and the bankruptcy court converted her case to a Chapter 7 bankruptcy.  The Village submitted a proof of claim for, and initiated an adversary case to determine the dischargeability of, the $5 million in civil penalties.  The Village alleged that, nearly a year after signing the Stipulation, Benkovitch and her family still had not corrected the life safety issues or made the required payments.  The Village took the position that because Benkovitch had materially breached the Stipulation, the Village's original claim for $5 million under the Magistrate Orders was back on the table.  Although the Village failed to properly effect service of process before the service deadline, the bankruptcy court determined that the case should be

3

decided on the merits and granted the Village an extension of time to correct the deficiency.

Benkovitch objected to the Village's claim. At the time, she did not dispute that she had materially defaulted on the Stipulation. Her sole argument before the bankruptcy court was that the Magistrate Orders imposed only *in rem* liens on the Mashta property (which she no longer owned), not *in personam* fines on Benkovitch herself—which would mean that the Village had no claim against her under the Magistrate Orders. The bankruptcy court was not persuaded. The bankruptcy court concluded that Benkovitch clearly owed *in personam* "penalties and fines" under the Magistrate Orders. It entered an order overruling her objection and allowing the Village to pursue its $5 million claim. On appeal to the district court, Benkovitch once again argued that the Magistrate Orders did not establish an *in personam* claim against her. The district court rejected her argument and affirmed.

Benkovitch now appeals—and this time around, she has changed her tune. She argues for the first time that it is the Stipulation, not the Magistrate Orders, that dooms the Village's claim. She asserts that the Stipulation extinguished the Village's $5 million claim whether or not she upheld her end of the bargain—or, in the alternative, that she did not actually breach the Stipulation as a factual matter. She also argues that the bankruptcy court abused its discretion by giving the

Village extra time to perfect service. Finally, she argues that the district court failed to rule on her challenge to the bankruptcy court's decision to overrule her objection to the Village's claim. We address each issue in turn.

## II.

## A.

We review a bankruptcy court's legal conclusions *de novo* and its factual findings for clear error. Generally, "an appellate court does not give consideration to issues not raised below." *Hormel v. Helvering*, 312 U.S. 552, 556 (1941). We may, however, review a new argument for plain error "if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice." *In re Lett*, 632 F.3d 1216, 1226 (11th Cir. 2011) (quoting *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc*., 689 F.2d 982, 990 (11th Cir. 1982)). That said, we have long expressed a special "reluctance to intrude upon the province of the bankruptcy courts below by reaching issues not brought before them, as 'bankruptcy cases are to be tried in bankruptcy court.'" *Id.* (quoting *In re Air Conditioning, Inc. of Stuart*, 845 F.2d 293, 298 (11th Cir. 1988)) (alteration omitted).

Benkovitch argues for the first time that the Stipulation bars the Village's $5 million claim. Specifically, she asserts that (1) the Stipulation is still binding despite conversion to Chapter 7 bankruptcy; (2) under the Stipulation, the Village

promised to give up its claim to the $5 million in civil penalties and agreed to accept just $89,000 in payments plus specific performance; and so (3) even if Benkovitch breached the Stipulation, the Village may only sue for the benefit of its bargain—roughly $89,000 and change—and not for the settled $5 million claim. Assuming *arguendo* that Benkovitch has not waived this argument entirely, there was no plain error here.

"A plain error is an error that is 'obvious' and is 'clear under current law.'" *United States v. Humphrey*, 164 F.3d 585, 588 (11th Cir. 1999) (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). Under that standard, it is anything but plain that the Village could not resurrect its $5 million claim after Benkovitch failed to uphold her end of the bargain. It is a well-established principle under Florida law that when one party materially breaches a contract, the non-breaching party may "treat the breach as a discharge of his contract liability." *Benemerito & Flores, M.D.'s, P.A. v. Roche*, 751 So. 2d 91, 93 (Fla. Dist. Ct. App. 1999) (citation omitted); *see Burlington & Rockenbach, P.A. v. Law Offices of E. Clay Parker*, 160 So. 3d 955, 960 (Fla. Dist. Ct. App. 2015) (explaining that "a material breach . . . relieves the injured party from further performance of its contractual duties"); *see also Forbes v. Prime Gen. Contractors, Inc.*, 255 So. 3d 448, 451 (Fla. Dist. Ct. App. 2018) (stating that the nonbreaching party has the option to "treat the contract as void" (citation omitted)). That is precisely what the Village

6

did here.  If there is any reason to doubt the application of this general principle to the facts before us, Benkovitch has not brought it to this Court's attention. Because Benkovitch materially breached the Stipulation, that agreement did not plainly foreclose the Village from reinstating its $5 million claim.

In the alternative, Benkovitch argues—also for the first time on appeal—that she never actually breached the Stipulation as a factual matter.  Not only did she fail to raise this issue in the courts below, but she expressly disavowed it.  In her bankruptcy court filings, Benkovitch admitted to the Village's allegation that she "failed to timely comply with all the provisions" of the Stipulation and that such failure constituted material default.  In any event, because this new argument involves questions of fact, we decline to address it here.

Benkovitch appears to have abandoned her prior argument that the Magistrate Orders imposed only a lien on the Mashta property, and not *in personam* civil penalties on Benkovitch herself.  And that is for the best, because— as thoroughly explained by the courts below—the Magistrate Orders explicitly ordered "the Violators," Benkovitch and her husband, to "pay continuing civil penalties of $4500 per day."  Benkovitch is thus personally liable for the Village's $5 million claim.  And because that claim is a for a "penalty" imposed by a "governmental unit," it is not dischargeable in bankruptcy.  11 U.S.C. § 523(a)(7).

7

B.

We make short work of Benkovitch's remaining arguments.

Benkovitch claims that the bankruptcy court abused its discretion by granting the Village an extension of time to complete service of process. When a plaintiff fails to serve process within 90 days after the complaint is filed, a court may either dismiss the case or "order that service be made within a specified time." Fed. R. Civ. P. 4(m). A "district court has the discretion to extend the time for service of process" even "in the absence of good cause." *Lepone-Dempsey v. Carroll Cty. Comm'rs*, 476 F.3d 1277, 1281 (11th Cir. 2007). "Relief may be justified, for example, if the applicable statute of limitations would bar the refiled action." *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1132 (11th Cir. 2005) (quoting Fed. R. Civ. P. 4(m), Advisory Committee Note, 1993 Amendments); *see Lepone-Dempsey*, 476 F.3d at 1282. Here, the bankruptcy court observed that the applicable statute of limitations would indeed have barred the Village from refiling its claim. An extension was appropriate, in the court's view, because it believed "that this matter should be resolved on the merits." That reasoning was firmly rooted in our precedents, and the court did not abuse its discretion by extending the deadline for service of process.

Finally, Benkovitch seeks yet another bite at the apple by claiming that the district court addressed only "two (2) of the three (3) Bankruptcy Court June 23,

8

2017 orders that Benkovitch ultimately appealed and briefed." Specifically, she asks us to remand on grounds that the court "only affirmed the Bankruptcy Court's June 23, 2017 Order Denying Benkovitch's Motion to Dismiss" and the "June 23, 2017 Order Granting the Village's Motion for Summary Judgment," but failed to rule on a "June 23, 2017 Order Overruling Benkovitch's Objection to the Village's Proof of Claim." But a review of the record reveals that the bankruptcy court did not issue three different June 23, 2017 orders—*one* order was filed on that date, titled "Order (I) Overruling Objection to Claim of Plaintiff [DE 824], (II) Denying Defendant's Motion to Dismiss [DE 32] and (III) Granting Plaintiff's Motion for Summary Judgment [DE 54]." Benkovitch's Notice of Appeal makes clear that she appealed that single June 23, 2017 order, as well as the bankruptcy court's earlier order denying her motion to dismiss for insufficient service of process. The district court analyzed and affirmed both orders in their entirety. Despite Benkovitch's best efforts to confuse the Court with the numbers and names of record documents, we conclude that the district court fully addressed all of Benkovitch's claims.

## III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

9